GREEN *v.* BARNEY.

*(Circuit Court, D. Massachusetts. February 28, 1884.)*

PATENT—LACHES—PENDING LITIGATION.
  When the validity of a patent is in litigation, the patentee may, without being guilty of laches, wait until a decision is rendered before bringing suit against infringers.

In Equity.

*Allen Webster,* for complainant.

*B. F. Thurston,* for defendant.

LOWELL, J. This suit is brought upon the much-litigated reissued patent, as both counsel have called it, granted to the plaintiff for driven wells, May 9, 1871, No. 4,372. The validity of the patent is not denied. The sum in dispute being small, it is made a question whether the plaintiff should not be remitted to his action at law. The evidence tends to show a technical right to an injunction, and a claim for some profits; and I do not conceive that I have a right, under these circumstances, to dismiss the suit, though, as to the costs, I will hear the parties. The usual license fee for a well for domestic uses is $10, and for one for supplying water for steam-en-

gines, $125. The complainant understood the defendant to say, in an interview which they had before suit was brought, that he had paid the complainant's agent the usual fee of $10 for one domestic well, and had afterwards moved it, as the defendant called it,—that is, had taken up the pipes, and put them down in another place,—which, according to the meaning of a license, as the plaintiff interprets it, requires a second royalty to be paid. The fact is not proved. There was a domestic well which was abandoned in 1873 and a new one driven, but the evidence does not explain when, or by whom, the first well was driven, or whether it had been licensed. The defendant had recently bought the place in 1873, and there is an intimation that the well was already there at that time. He paid the royalty in 1876 for the only domestic well which he now uses, or has used, since 1873; and in the absence of proof to the contrary, the presumption is that he paid all that the agent asked him to pay. Certain it is that he did not move the well after he paid the royalty, but before. In the same year (1873) the defendant made a driven well in the celler of his workshop, to supply his boiler, and used it for seven months, when he discontinued the use of it, which he has never resumed. It does not appear that he has destroyed it, or taken up the pipes. There is no reason to suppose that he will ever use it again; for the water injured his boiler, and he laid pipes to the adjacent river, which furnishes a purer and better supply. In this state of facts, the plaintiff understood the defendant to be ready and to offer to pay $10 for the double use of the domestic well; and he charged him with the usual royalty of $125 for the "well used for engine," and says that he refused to accept anything unless the whole was settled. How near the parties came to an agreement is not proved, nor whether the defendant offered to pay anything for the seven months' use of the larger well. It is plain, however, that the charge of $125, which is the price of a perpetual license, was excessive, unless it could be shown (which seems highly improbable) that the defendant's profits for the seven months were equal to that sum.

As to the point of laches, so ably argued by the defendant's counsel. This suit was brought in 1879, and the complainant's patent having been and being still severely litigated, he could not be bound to proceed against all supposed infringers, until at least the first decree in his favor, which was made by Judge BENEDICT in 1876, (*Colgate* v. *Gold & Stock Tel. Co.* 4 Ban. & A. 415;) and between that date and 1879 he had, I do not doubt, a great deal of information to obtain as to the facts of the numerous infringements.

I shall make an interlocutory decree for the plaintiff; but neither refer the case to a master, nor settle the costs, until the parties have had further opportunity to adjust their differences without more expense.