CAMPBELL PRINTING-PRESS & MANUF'G CO. *v.* MANHATTAN RY. CO.

*(Circuit Court, S. D. New York. March 9, 1892.)*

1 PATENTS FOR INVENTIONS—INFRINGEMENT—ACCOUNTING.
Where infringement is admitted, damage is presumed, and the owner of the patent is entitled to a reference for accounting, without giving specific evidence of damage.

2 SAME—INJUNCTION.
Where, in a suit against a railroad company for infringement, the answer admits the validity of the patent, complainant's title thereto, and the infringement, the company cannot avoid an absolute injunction by averring that the invention is of

trifling value, and offering to submit to a decree for nominal past damages, and to an injunction against the adoption of any more of the patented articles, on condition of the undisturbed use of those already upon its trains.

**3. SAME.**

On the question as to whether an injunction should issue, it is immaterial that the owner of the patent has never made, used, or sold any of the patented articles, or licensed any one to do so; especially when it appears that he has not done so because defendant and other railroad companies, being unwilling to pay the price asked by him, adopted his invention without leave, expecting to pay a less sum by way of damages for infringement.

**4. SAME—HARDSHIP.**

Defendant cannot escape the injunction on the ground of hardship to itself or to the public, since the decree may provide for a gradual removal from its cars of the patented article, so as not to cause the withdrawal from service of a large amount of rolling stock at any one time; and for that purpose the amount of rolling stock required and available for its business may be proved by affidavits or the oral examination of its superintendent as master mechanic.

In Equity. Suit by the Campbell Printing-Press & Manufacturing Company against the Manhattan Railway Company for infringement of a patent. Decree for injunction and an accounting.

*Chas. De Hart Brower*, for complainant.

*Davies, Short & Townsend*, for defendant.

LACOMBE, Circuit Judge. The complainant is the owner of letters patent No. 401,680, granted April 16, 1889, to Edward S. Boynton for a "new and useful improvement in valves for pneumatic pipes or tubes." The second claim of the patent is:

"(2) In combination with an external pivoted valve, a self-closing device, consisting of a compressive helical spring held within a tubular guide, formed upon or attached to said valve, between one end of said guide and a stop at the pivotal point of the valve, substantially as and for the purposes set forth."

This claim was sustained by Judge COXE in *Campbell Printing-Press & Manuf'g Co.* v. *Eames Vacuum Co.*, 44 Fed. Rep. 64, and disclaimer as to the first claim was duly entered in the patent-office prior to the bringing of this suit. The bill charges infringement of this second claim, prays injunction and accounting, and expressly waives answer under oath. A preliminary injunction was refused. *Campbell Printing-Press & Manuf'g Co.* v. *Manhattan Ry. Co.*, 47 Fed. Rep. 663. The case now comes up for final hearing upon bill, answer, and replication. The answer (unverified) admits the grant of the letters patent, and complainant's title thereto, and that they are good and valid as to the second claim thereof. It further admits that since April 16, 1889, (the date of the issue of the patent,) defendant has used couplings embodying the invention covered by the second claim, and that the number so used is 2,678, on 1,017 cars and 322 locomotives, some of said couplings having been applied before April 16, 1889, and others from time to time since. It further avers that the invention is of trifling, if any, pecuniary value; that complainant has never made, used, or sold the patented invention, and has never licensed any one to make, use, or sell the same; that the defendant uses it upon cars constantly employed by it in the transportation of passengers, and that an injunction would be a hardship to defendant, would seriously inconvenience it in its passenger carrying

service, and would be of no benefit to complainant. It offers to submit to a final decree for injunction against the use of any additional infringing couplings. For the past and future undisturbed use of those which it has placed upon its cars, without leave or license of the owner of the patent, and in admitted violation of the rights secured to such owner thereby, it also offers to submit to a judgment for nominal damages.

To the complainant's application for an accounting before a master it is objected that it has not given specific evidence of damages sustained. But under the pleadings it is not necessary for the complainant to give such proof. Infringement is admitted, and from infringement damage ard deprivation of profits are presumed. *Wooster* v. *Muser*, 20 Fed. Rep. 162. To what extent, and whether nominal or substantial, is a matter to be settled on the accounting. Complainant has shown all that is necessary to entitle it to a decree sending the case to a master, when it has shown infringement of a valid patent owned by itself. *Brickill* v. *Mayor*, 7 Fed. Rep. 479. The decision of Judge BROWN in the case at bar (48 Fed. Rep. 344) did not pass upon this point. It only settled a question of practice, holding that a motion at chambers was not proper procedure.

The contention of the defendant that, because it is willing to pay nominal damages for past infringement, an injunction to restrain future infringement should not issue, is unsound. In *Birdsell* v. *Shaliol*, 112 U. S. 487, 5 Sup. Ct. Rep. 244, the supreme court held that "an infringer does not, by paying damages for making and using a machine in infringement of a patent, acquire any right himself to the future use of the machine. On the contrary he may, in addition to the payment of damages for past infringement, be restrained by injunction from further use, [citing authorities.]" See, also, *Matthews* v. *Spangenberg*, 15 Fed. Rep. 813; *Bragg* v. *City of Stockton*, 27 Fed. Rep. 509. The proposition advanced by the defendant is practically this: If an inventor, whose patented improvement in locomotive machinery, although valid, is of but trifling value to a common carrier, himself thinks it valuable, and therefore demands a license fee for its use, higher than such common carriers as would like to use it are willing to pay, they may nevertheless appropriate his invention to their use, may place it on their cars and locomotives without his permission, and may continue to use it till it wears out, without interference, on the ground that to remove it would inconvenience the public; and that for such enforced license they should be made to pay, not the fee the inventor asks, but such sum as a master of the court may think the invention is worth. Baldly stated, the contention is that, when a patentee asks a price for the use of his patent higher than users wish to pay, and refuses to license its use except at such price, it may be confiscated and sold to whoever wants it, at a price to be fixed by a United States circuit court. Whether or not such a qualification of the monopoly secured by letters patent would be desirable legislation is immaterial; it is not now on the statute book, nor is there found controlling authority in its support among the cases cited by the defendant's counsel.

In *Barnard* v. *Gibson*, 7 How. 657, the parties claimed conflicting interests as assignees of a patent, and there was thus an issue raised in the case which the circuit court had determined adversely to the defendant; but his right to review that decision, by appeal from final decree whenever it might be entered, still remained.   The supreme court declared that it was a "hardship" sufficient to have deterred the circuit court from granting an injunction that the case was not ended in that court, so that there might be a final decree for the defendant to appeal from, and perhaps secure a reversal of the finding that complainant's title was good.   Here no such issue is raised.   Title, validity of the patent, and infringement are established, not by the decision of this court, but by defendant's own admissions on the record, and no appeal could possibly result in a different conclusion.   In *Pullman* v. *Railroad Co.*, 5 Fed. Rep. 72, defendants were strenuously asserting prior use and non-infringement.   In *Hoe* v. *Advertiser Co.*, 14 Fed. Rep. 914, it was apparent that to make a change in the printing-press on which the daily newspaper of the defendant was printed would greatly embarrass the usual course of its business.   Moreover, the defendant was contesting the validity of the patent, and, though the circuit court sustained it, there was a possibility of reversal.   In *Howe* v. *Morton*, 1 Fish. Pat. Cas. 601, the validity of the patent was vigorously assailed.   In *Stainthorp* v. *Humiston*, 2 Fish. Pat. Cas. 311, the fact of infringement was contested. In *Morris* v. *Manufacturing Co.*, 3 Fish. Pat. Cas. 67, the court did not "think that complainant's title was entirely clear."   The patent had only six months to run, and injunction would close defendant's mill for that whole period, throwing many hands out of employment.   In *Wells* v. *Gill*, 6 Fish. Pat. Cas. 89, the decree (in another case) which sustained the validity of the patent was before the supreme court on appeal.   Judge Strong, though refusing an injunction, expressly stated that, had that decree been acquiesced in or affirmed by the supreme court, he would have awarded one.   All of these cases (except *Barnard* v. *Gibson*, *supra*) were applications for preliminary injunction, as were also *Colgate* v. *Telegraph Co.*, 4 Ban. & A. 415, and *New York Grape Sugar Co.* v. *American Grape Sugar Co.*, 10 Fed. Rep. 837.   *Lowell Manuf'g Co.* v. *Hartford Carpet Co.*, 2 Fish. Pat. Cas. 475, is plainly an authority only under the facts of that particular case, which are stated too briefly in the report to afford much information as to what the court did decide.   In *Forbush* v. *Bradford*, 1 Fish. Pat. Cas. 318, Judge Curtis refused a temporary injunction, where the same issues had been tried at law between the same parties, such trial resulting in a verdict for the plaintiff; but he did so on the express ground that a bill of exceptions had been taken upon points which involved the validity of the patent, and that, as the bill of exceptions was not frivolous, the litigation as to complainant's title was not in fact terminated, and it was necessary, in weighing the relative hardship of granting or refusing an injunction, to contemplate a decision adverse to complainant's title as a possible result.   But the learned judge expressly added that, even though the effect of an injunction would be to stop all the defendant's looms till the patented improvement could be re-

moved, that would not prevent the court from granting an injunction if the right had been finally established at law. In the case at bar, where neither validity, title, nor infringement is questioned, the complainant's right to its monopoly is finally established. In *McCrary* v. *Canal Co.*, 5 Fed. Rep. 307, injunction was refused where defendants were using complainant's "improvement in coupling and steering canal-boats," on the ground that the "allowance of an injunction would cause much greater injury to the respondent than benefit to the complainant." Defendants were contending that the patent was an invalid reissue. Although the circuit court did not sustain that or the other defenses, the defendants still had their appeal, and it could not be held that all questions of validity, title, and infringement had been finally determined. As no facts are stated in the report of the case, it does not appear what was the respective injury or benefit. In the case at bar the only injury to the defendant is the cost of substituting some other coupling; it expressly repudiated (on the former motion) any benefit from the improvement, insisting that other couplings which it was free to use were better than complainant's. By refusing an injunction, the court practically informs the complainant, and all who may wish to use its couplings, that, because it asks more for the improvement than they are willing to pay, it must nevertheless be content to see them appropriate it at a price to be fixed hereafter by this court. On which side the balance of hardship in this case inclines seems not difficult to determine.

The remarks of Judge GRIER in *Sanders* v. *Logan*, 2 Fish. Pat. Cas. 16", are purely *obiter*, the bill in that case being dismissed on the ground that prior use was shown. Besides, the learned judge evidently assumed that the license fee, payment of which would be full compensation to the complainant for future as well as past trespasses, was a "fixed sum." Undoubtedly, where there is a given license fee which is paid by others for the use of an improvement in some "mill, manufactory, locomotive, or steam-engine," equity will not lend its aid to enable a patentee, by an injunction, practically against the whole apparatus, to extort a larger sum from some particular infringer who is prepared to pay the "given sum" for the privilege of using the improvement. But that is not this case. There is no "fixed sum," for there have, as yet, been no actual sales of licenses, other railroads (as was stated on the argument) having followed defendant's example, and appropriated the new coupling without payment or permission, expecting, apparently, by that means to be able to compel the complainant to accept much less than he would sell his license for, except under some such constraint, —perhaps a merely nominal sum,—for, although it seems to have kept putting his coupling on its cars, even after it had tested it by use, defendant yet insists that it is a wholly valueless improvement.

The decision of Judge BLODGETT in *Hoe* v. *Knap*, 27 Fed. Rep. 204, fully sustains the defendant's contention. In that case the owner of the patent was a large manufacturer of printing-presses, which he did not keep in stock, but made to order. The patented device was a small part of the entire machine. As matter of fact, complainant had not up to

that time sold any press embodying the improvement, because none had been ordered. Apparently he thought it for his best business interest to hold the patent, and use it exclusively in presses of his own make, and hence had no regular license fee for its use. Judge BLODGETT, however, at final hearing, refused an injunction against an infringer, holding that, "under a patent which gives a patentee a monopoly, he is bound either to use the patent himself, or allow others to use it, on reasonable terms." No authorities for this proposition, however, are cited in the opinion, nor is such a construction of the statute, which provides that a patentee shall receive a grant of the "exclusive right to make, use, and vend" his invention, supported by argument. Although great weight is always to be given to decisions of the circuit courts, they are not controlling authority when the same question is presented in another circuit. I do not, therefore, feel constrained by this decision to refuse the complainant its injunction, because it asks more for a license than defendant cares to pay.

Defendant also insists that injunction should not issue because the infringing couplings now in use by it are used in the service of the public, and to enjoin would be to work great hardship to the public. In *Bliss v. Brooklyn*, 4 Fish. Pat. Cas. 596, injunction was refused because the hose couplings complained of were necessary for the daily use of the city in the prevention of fires; and there is a long line of authorities to the same effect. There is, however, nothing in the case at bar, beyond the bare assertion of the defendant, to show that an injunction properly regulated as to time may not be obeyed without in any way interfering with the service which defendant renders to the public as a common carrier of passengers. It seems to have experienced no difficulty at all in temporarily withdrawing its locomotives and cars from such service at suitable seasons, for a sufficient length of time to affix the complainant's couplings. Why it may not, in like manner, remove them, does not appear. Complainant may take decree for account and injunction. The terms of the injunction, providing from how many cars and locomotives the infringing couplings shall be removed each week, may be settled on notice; and if defendant will at that time present affidavits showing the character of the work required, the amount of its rolling stock in use and reserve, and its shop facilities, there need be no difficulty about arranging the terms of the decree; or, if it be preferred, defendant, instead of affidavits, may present its superintendent or master mechanic for examination to aid the court in settling the terms.