## Case No. 12,295.

### SANDERS v. LOGAN et al.

[2 Fish. Pat. Cas. 167:[1] 9 Am. Law Reg. 475; 2 Pittsb. Rep. 241; 8 Pittsb. Leg. J. 361.]

Circuit Court, W. D. Pennsylvania. May 13, 1861.

PATENTS — INFRINGEMENT — EQUITABLE RELIEF — MEASURE OF DAMAGES—LICENSE FEE — PROFITS —WINNOWING MACHINE—NOVELTY — ABANDONMENT.

1. The circuit courts of the United States, having jurisdiction in equity of controversies arising under the United States patent laws, do not act as ancillary to a court of law, and, therefore, do not require the patentee first to establish his legal right in a court of law and by the verdict of a jury.

[Cited in Hoffheins v. Brandt, Case No. 6,575; McMullin v. Barclay, Id. 8.902.]

2. Where the injury done to a patentee by infringement of his patent is not in the use of his invention, but in making use of it without compensating the patentee therefor, it being the interest of the patentee that his invention should be used and adopted by all, the measure of "actual damage" is the price or value of a license to use it.

3. In such cases, the measure of damage being a certain sum, an account of profits is not required, and the jurisdiction of a chancellor need not be invoked.

[Cited in Knox v. Great Western Quicksilver Min. Co., Case No. 7.906; Vaughan v. Central Pac. R. Co., Id. 16,897; Vaughan v. East Tennessee, V. & G. R. Co., Id. 16,-898; Brown v. Deere, 6 Fed. 490; Atwood v. Portland Co., 10 Fed. 285; Hoe v. Boston Daily Advertising Corp., 14 Fed. 916; Smith v. Sands, 24 Fed. 472; Consolidated Roller-Mill Co. v. Coombs, 39 Fed. 804; Campbell Printing-Press & Manuf'g Co. v. Manhattan R. Co., 49 Fed. 934.]

4. Injunction is not the proper remedy in such cases: it is a remedy used only for prevention and protection, and not to enforce the payment of money, nor for extortion.

[Cited in New York Grape Sugar Co. v. American Grape Sugar Co., 10 Fed. 837; Whitcomb v. Girard Coal Co., 47 Fed. 318.]

5. A court of law may treble a verdict for "actual damage" in a patent suit. where the defendant has acted wantonly or vexatiously, but a court of equity can inflict no exemplary or punitive damages.

[Cited in Livingston v. Jones, Case No. 8,-414.]

6. In Sanders' patent for improvement in winnowing machines, issued June 19, 1849, reissued April 10, 1855, the claim in the original patent is a correct description of the whole invention. The third claim of the reissued patent is too broad. The use of a vertical blast spout, so arranged that grain is cleaned from impurities w'  'in said spout, was not new.

7. The use of several machines in public, for more than two years prior to applying for a patent, although slightly varying in form and arrangement, yet substantially the same as afterward patented, can not be alleged to be experimental, so as to avoid the legal consequences of such prior use.

[Cited in American Hide & Leather S. & D. Mach. Co. v. American Tool & Mach. Co., Case No. 302; Andrews v. Hovey, 124 U. S. 709, 8 Sup. Ct. 681.]

8. The obvious construction of section 7 of the act of 1839 [5 Stat. 354] is that a purchase, sale, or prior use, within two years before applying for a patent, shall not invalidate. unless it amounts to an abandonment to the public.

9. Abandonment may take place within the two years prior to the application for a patent.

[Bill filed by Benjamin D. Sanders against John T. Logan, William Bagley, and others for infringement of letters patent No. 6,545, granted to complainant for improvement in winnowing machines, issued the 19th June, 1849, reissued April 10, '855 (No. 306), praying for injunction to restrain the defendants from further use of said improvement, and for an account, &c.][2]

The claim of the original patent was as follows: "What I claim as my invention is the trunk F gradually enlarged from below up-

---

[1] [Reported by Samuel S. Fisher, Esq., and here reprinted by permission.]

21FED.CAS.—21

[2] [From 9 Am. Law Reg. 475.]

ward, and communicating with the atmospheric current through the screen H in communication with hopper E; and the fan placed at the end of the opposite vertical trunk D to separate the chaff and other impurities from the grain, in the manner substantially as herein described." The invention is more fully and clearly described in the extract from the reissued patent, which, including the claims, is given below: "A represents the frame of the machine, of rectangular form, and provided with a step at the lower end, in which the lower end of a vertical shaft B is inserted. On the shaft B a fan C is attached, inclosed by a fan box, the center of which communicates with a vertical spout D of any proper form. The upper end of the spout D is connected with a horizontal spout E having a stopper E at its lowest part or side. The opposite end of the horizontal spout E is connected to a vertical spout F, that a requisite quantity of air may be admitted into the spout. At about twelve inches from the lower end of the spout F, and within it, there is placed a screen H, constructed of about No. 9 wire. The grain passes over this screen into the hopper G, which is fixed under it, a space (a) being left for this purpose. The fan C is put in motion, by any power, by a band passing around a pulley on the shaft B. A partial vacuum is formed in the trunk by the motion of the fan C, and the air rushes into the lower end of the spout F, and passes in a current through the screen H, lifting up the chaff and everything specifically lighter than the sound grain, which passes into the hopper G, while the more heavy matter of the refuse is carried over the top of the spout F and into the horizontal spout E and falls into the hopper E1. The chaff and other light impurities are carried along through the fan box, and conducted out by the spout (d). The trunk F, being gradually enlarged in area, from its lower end upward, prevents any good or sound grain passing into the horizontal spout E, as the strength of the blast, of course, diminishes with the increased area, and consequently the sound grain can not be carried over the top of the spout F. Having thus described my invention, what I claim as new, and desire to secure by letters patent, is: 1st. The employment or use of a vertical blast spout F, gradually enlarged from its lower to its upper end, so that the strength of the blast is decreased in the upper portion of the spout, owing to the increased space or area of the spout, for the purpose of preventing any sound or perfect grain being carried, with the light foreign matter, over the upper edge of the spout, the blast being formed or generated in said spout in any proper manner. 2nd. I claim the blast spout F, either gradually enlarged from below upward, or of the same dimensions throughout, and communicating with the atmospheric current through the screen H in combination with the hopper E1, and the fan placed at the end of the opposite vertical spout D to separate the chaff and other impurities from the grain, in the manner substantially as herein described. 3rd. I claim the employment or use of a vertical blast spout, either gradually enlarged from below upward, or of the same dimensions throughout, when said blast spout is so arranged that the grain is cleaned or separated from impurities within said vertical spout."

[The respondents' answer alleges that the patent is void—First, for the want of novelty; second, by reason of public use by patentee and others for more than two years prior to the application for a patent; third, by reason of abandonment prior to the application; fourth, prior description of the alleged invention in public printed works; fifth, that the patentee was not the inventor. The answer also denies the infringement. The nature of the invention and the claims are set forth in the opinion of the court. On the plea denying the infringement, the respondents showed that in their machines the vertical blast-spout, in which the grain is cleaned, is of the same dimensions throughout, and that the blast-spout in their machines does not communicate with the atmospheric current through a screen; and, therefore, they claimed that they did not use the combination set forth in the complainant's patent. In proof that the subject-matter of the third claim of complainant's reissued patent was not new at the time of his alleged invention, they offer in evidence the following patents, viz.: Orrin Lull's smut machine, patented 6th April, 1843. James Coppuck's grain-cleaning machine, patented 24th April, 1841. Phillips & Jackson's winnowing machine, patented 4th May, 1841. Joseph Johnson's smut machine, patented September 4, 1842.] [2]

T. A. Lowrie and E. M. Stanton, for complainant.

George Shiras and W. Bakewell, for defendants.

Before GRIER, Circuit Justice, and McCANDLESS, District Judge.

GRIER, Circuit Justice. The complainant alleges, in his bill, that he is the original and first inventor and patentee of "a machine for winnowing and cleaning grain of chaff, smut, and other impurities." His original patent was dated June 19, 1849. It was afterward surrendered and a new patent granted, with an amended specification, on April 10, 1855. The bill prays for an injunction and an account; and yet admitting the validity of the patent and its infringement by respondents, it is clear that. as a proper remedy for the injury complained of, neither an injunction nor an account is necessary or proper. The invention claimed is for an improvement in the machinery of grist mills, and the only injury to plaintiff's rights exists not in using his invention, for it is his interest that all mills should adopt and use it, provided he is paid

---

[2] [From 9 Am. Law Reg. 475.]

the price of a license. Such price or value of a license is the true measure of the "actual damage" suffered, and of the remedy which the patentee can obtain, or has a right to claim in equity. A court of law may treble such a verdict where the defendant has acted wantonly or vexatiously. Where the measure of damage is a certain sum, and does not require an account of profits, the peculiar jurisdiction of a chancellor is not needed for that purpose. The remedy by injunction is neither necessary nor proper to enforce the payment of money. It is true that injunctions are now more liberally granted than in former times, yet the granting or refusal of them rests in the sound discretion of the court. A rash or indiscreet exercise of this power may be very oppressive, of no use to the complainant and ruinous to the defendant. As a remedy, it should be administered only for prevention or protection. Where it is not necessary for these purposes, it is merely vindictive, injuring one party without benefit to the other. There are many cases of patents where it is the only efficient remedy to protect the patentee, and prevent continuing trespasses on his rights. But there are others in which it answers neither purpose, and is only used for extortion or vengeance. A chancellor who would issue an injunction to stop a mill or manufactory, locomotive or steam engine, because in its construction some patented device or machine has been used, would act with more than doubtful discretion. Stopping the mill or steam engine might inflict irreparable injury, but could not benefit the inventor. The compensation to him for this trespass on his rights is the price of a license. The wrong done him is not the use of his invention, but the non-payment of a given sum of money. To issue an injunction in such a case, where neither prevention nor protection is sought or required, but only compensation, would be an abuse of power. An injunction is not to be used as an execution or for extortion.

The circuit courts of the United States have jurisdiction of controversies arising under the patent laws by direct grant from congress. They do not merely act as ancillary to a court of law, and therefore do not require the patentee to establish his legal right in a court of law and by the verdict of a jury. There has been no objection interposed to the jurisdiction of the court in this case, nor do I wish to be considered as deciding that the court has no jurisdiction, but rather as suggesting to counsel whether they have chosen the proper tribunal, when the bill exhibits a case where neither account nor injunction is a proper remedy, but only a decree for a certain sum of money, with interest, as fixed actual damage. A court of equity can inflict no exemplary or punitive damages as a court of law may. Hence the party may have better remedy in a suit at law.

The complainant's patent gives the following general description of the nature of his invention: "The nature of my invention consists, first, in separating the chaff, smut, and other impurities from grain, by subjecting the same to a blast within a vertical spout, as will be hereafter shown, whereby the sound grain, by its superior gravity, is prevented from being carried upward by the blast or current of air, and, at the same time, the impurities, which are light, follow the current, and are drawn through the fan-box and discharged through the longitudinal trunk of the same, the light or imperfect grain being carried upward and lodged within a hopper at the lowest part of the horizontal trunk. My invention also consists in the combination of vertical blast spouts, screen, hopper, and fan, arranged and operated, as will be hereafter shown and described."

The claim set forth in the original patent of 1849 is a correct description of the whole invention. The amended patent of 1855 describes the same invention, with immaterial variations, or more minute directions as to size and shape. The chief difference is, that the claim of the last is made broader than that of the original, whether better may be doubted.

The answer of respondents alleges: 1. That complainant was not the original and first inventor of the machine, or combination of devices, claimed as his invention. 2. But admitting him to be so, he had abandoned his invention to the public prior to the application for a patent. 3. The invention was in public use, with knowledge and consent of complainant, more than two years previous to his application for a patent. 4. That the machine used by the defendant does not infringe the rights of complainant. If any one of these allegations be established by the evidence, the respondents are entitled to a decree.

I see no reason to doubt that the plaintiff is the original inventor of the device in the first claim, and, also, of the combination claimed in the second, notwithstanding the valuable suggestions and assistance rendered to him by his partner, Justus, in perfecting his machine.

The third claim is too broad. The vertical spout had previously been used, in the same way. in other machines invented and patented for the purpose of cleaning grain from its impurities. It is to be found in Lull's smut machine, patented in 1843, and in some others.

Sanders made his first machine in 1844. It embodied the ideas of his subsequent patent as to the combination of devices to be used, though differing somewhat in arrangement and form. He had put it in operation in Hugh Ryland's mill in Virginia. Afterward, in September, 1855, when he was in the employment of Justus, with whom he had first learned his trade of millwright, and assisting him in his erecting the machinery of Davis' mill, he informed him of the machine he had put in operation in Virginia. Justus seized upon the ideas suggested by Sanders, made plans and a model, improving upon them, and erected the machine, substantially as it was afterward patented, in Davis' mill. This was in December, 1845. In July, 1846, Justus

erected one of these machines for Crawford. In September, Justus and Sanders entered into partnership as millwrights. Sanders suggested that they should take out a joint patent for the invention. Justus said he thought it did not deserve a patent; there was too little to be patented. They then proceeded to put these machines in every mill which they were employed to erect during their partnership, which was dissolved in 1848. They considered the machine as completed by their joint invention, and freely gave it to the public till November 30, 1848, when Sanders entered his claim for a patent.

It is clear, therefore, that assuming that Sanders was the sole inventor of the machine, as perfected in 1845, with Justus' assistance, yet that he was not entitled to a patent for the same. The evidence established a clear case of abandonment, and, moreover, that the invention was publicly used, with the knowledge, consent, and approbation of the complainant more than two years previous to his application for a patent. The allegation that these machines were made and incorporated into so many mills all over the country for the purposes of experiment, is too absurd to be entertained for a moment.

By the act of July 4, 1836 [5 Stat. 117], a use of an invention by a single person, or a sale of the thing invented to a single person, might amount to such a public use, without consent and allowance of the patentee, as would forfeit his right to a patent.

Section 7 of the act of 1839 [5 Stat. 354], provides a remedy for cases where the conduct of the party does not show an actual abandonment. It secures the rights of those who may have purchased or constructed any newly-invented machine prior to the application for a patent. It provides that "no patent shall be held to be invalid by reason of such purchase, sale, or use prior to the application for a patent, except on proof of abandonment of such invention to the public; or that such purchase, sale, or prior use, has been for more than two years prior to such application for a patent." The obvious construction of this section of the act is, that a purchase, sale, or prior use, shall not invalidate, unless it amounts to an abandonment to the public. Although I am of opinion that the evidence exhibits a clear case of abandonment, as distinguished from the "purchase, sale, or prior use," which it tolerated for two years, it is not necessary to rest our decision on that point alone, or to attempt to draw a line of distinction which might be applicable to other cases. The prior use has been proved to have existed more than two years before application for a patent.

As I think the respondents have supported this plea, they are entitled to a decree; I need not, therefore, enlarge upon the plea denying the infringement, further than to say, I think the respondents would have been entitled to a decree in their favor on that point also.

The bill must be dismissed, with costs.