## Case No. 9,833.

MORRIS et al. v. LOWELL MANUF'G CO.

[3 Fish. Pat. Cas. 67.] [1]

Circuit Court, D. Massachusetts. March, 1866.

INJUNCTION—PRELIMINARY—PATENT CASE—WHAT CONSIDERED — INJURY TO PLAINTIFF—TO DEFENDANT—USED IN GOOD FAITH—NOTICE.

1. In granting or refusing a preliminary injunction, the court will carefully consider the situation of the parties. Its important office is to preserve the rights of the patentee pending the litigation of his title.

2. If the title of the patentee has already been fully established, or is otherwise so clear that no reasonable doubt of its validity remains, a court of equity would, in many cases, grant a preliminary injunction notwithstanding the injury which might result to the defendant. But when there is no danger of loss to the plaintiff, and great loss will result to the defendant. the case must be substantially free from doubt to justify an injunction.

[Cited in New York Grape Sugar Co. v. American Grape Sugar Co., 10 Fed. 837; Consolidated Roller-Mill Co. v. Coombs, 39 Fed. 803; Whitcomb v. Girard Coal Co., 47 Fed. 318; Campbell Printing-Press & Manuf'g Co. v. Manhattan Ry. Co., 49 Fed. 933.]

3. It is a material circumstance, upon a motion for a preliminary injunction. whether or not the defendant is fully responsible for any profits or damages which may be decreed against him.

[Cited in Kane v. Huggins Cracker & Candy Co., 44 Fed. 292.]

4. It is also a material circumstance that the defendant does not make or vend the patented machine. but only uses it, so that the injury to the plaintiff is the loss of his royalty and not a damaging and constantly increasing competition.

[Cited in Hoe v. Boston Daily Advertiser Corp. 14 Fed. 916; Campbell Printing-Press

---

[1] [Reported by Samuel S. Fisher, Esq., and here reprinted by permission.]

& Manuf'g Co. v. Manhattan Ry. Co., 47 Fed. 663.]

5. While an injunction is of great use in preventing multiplicity of suits or repeated actions for successive infringements, it is no part of its legitimate office to stop litigation in the suit in which it is granted, or to force the compromise of a disputed right.

6. There are cases so clear that a court of equity will not permit further litigation; and there are others in which, upon a balance of the equities, and of the danger of serious injury, the plaintiff's rights decidedly preponderate. In such cases the results which would indirectly follow the granting of an injunction, could not be regarded.

7. If there has been a decision in favor of the plaintiff. and a motion for new trial, exceptions or an appeal are taken or made, and there appear to be questions of some nicety or importance, so that the action taken by the defendant can not be thought to be intended merely for delay, a court of equity will often wait for the final result before awarding an injunction.

[Cited in Brown v. Deere, 6 Fed. 490.]

8. One who is known to the patentee to be using his improvement, in apparent good faith, is entitled to definite and early information of the patentee's construction of his own rights, and of his intention to enforce them.

This was a motion [by Francis Morris and others] for a provisional injunction to restrain the defendants from infringing the letters patent for "improvement in the machine for ginning cotton and wool," granted to Stephen R. Parkhurst, May 1, 1845, extended for seven years from May 1, 1859, reissued February 12, 1861, and assigned to complainants. The facts sufficiently appear in the opinion of the court.

George Gifford and B. R. Curtis, for complainants.

C. L. Woodbury, for defendants.

LOWELL, District Judge. This is a motion for a preliminary injunction to restrain the use, by the respondents. of the burring machine said to be invented by S. R. Parkhurst, and described in his reissued patent, dated February 12, 1861. The plaintiffs are assignees of that patent, and have obtained a decree in an equity suit in the circuit court for the Southern district of New York, before Mr. Justice Nelson, against Charles L. Goddard, the maker of the machine, for an injunction and account. The account has not yet been made up by the master, and it is said that Goddard intends to appeal from the final decree and carry the case to the supreme court. It appears that Goddard held an assignment of one-third of the machine, which it is admitted gave him a right to make and vend it during the existence of the original patent. That assignment was not before the court in the action against Goddard himself, and it is now contended by the respondents that by the true construction of its terms it grants a like interest for the renewed term. It further appears that the renewed patent will expire on the first day of May next, and that if the use of the burring machine is enjoined in this mill and the others in which

it is used in this district, the necessary changes can not be made in the carding machinery with which it is connected, much, if at all, before the first of May, and that in the meantime a large number of workmen will be thrown out of employment, and a considerable part of the defendants' machinery will be stopped.

In granting or refusing a preliminary injunction, the court will carefully consider the situation of the parties. Its important office is to preserve the rights of the patentee pending the litigation of his title. If the title has already been fully established, or is otherwise so clear that no reasonable doubt of its validity remains, a court of equity would, in many cases, grant such an injunction, as it would a final injunction, notwithstanding the injury which might result to the defendant. But where there is no danger of loss to the plaintiff, and a great loss will result to the defendant, the case must be substantially free from doubt to require such action. In the present case, the defendants are admitted to be fully responsible for any profits or damages that may be decreed against them. This is a material circumstance · Newall v. Wilson, 2 De. Gex, M. & G. 282; Day v. Boston Belting Co. [Case No. 3,674]. Another is that the defendants do not make or vend the patented machine, but only use it, so that the injury to the plaintiffs is the loss of their royalty and not a damaging and constantly increasing competition. Forbush v. Bradford [Id. 4,930]; Neilson v. Thompson, Webst. Pat. Cas. 278.

It is said that the royalty demanded is so moderate compared with the injury to the manufacturers which would follow an injunction, that the controversy would practically end now if the motion be granted, while the expense of further litigation might be a serious consideration for the plaintiffs.

These facts have been urged by both sides. They do not furnish a conclusive argument for either. On the one hand an injunction is of great use in preventing multiplicity of suits, repeated actions for successive infringements, but it is no part of its legitimate office to stop litigation in the suit in which it is granted, or to force the compromise of a disputed right. On the other hand, there are cases so clear that a court of equity will not permit further litigation; and there are others in which upon a balance of the equities, and of the danger of serious injury, the plaintiffs' rights decidedly preponderate. In such cases the results which would indirectly follow the granting of an injunction which equity called for, could not be regarded. So that upon this point we are brought back to the title of the plaintiffs and the situation of the parties.

So far as any danger of serious loss or irreparable mischief is concerned, the plaintiffs have shown no cause for the court to interfere. Nor am I sure that their title is so entirely clear as to make it a matter of course to issue the injunction without regard to the damage it might do the defendants. If we grant to the decision which has been made in the plaintiffs' favor all the faith and credit which would be due to a like decree in this circuit, yet even in such a case an injunction would not always be granted. If a motion for a new trial, exceptions, or an appeal are taken or made, and there appear to be questions of some nicety or importance, so that the action taken by the defendant can not be thought to be intended merely for delay, a court of equity will often wait for the final result before awarding an injunction. Neilson v. Thompson, Webst. Pat. Cas. 278, 286; Forbush v. Bradford [supra.] And this, even though the judge who tried the cause has but little doubt of the correctness of the first decision. I am inclined to think some of the questions involved here are of the character above indicated./ But the turning point with me is that the inconvenience which it appears the defendants would suffer is not counterbalanced by any corresponding advantage to the plaintiffs, coupled with the fact that by the time they had at great expense and loss to themselves and their workmen, adapted their works to carding without the plaintiffs' improvements, they would have the right to change them back again to their present condition. In an important case before Judge Sprague, in which the plaintiffs' patent was not disputed, and in which his own opinion appears to have been quite clear upon the question of infringement, he refused to grant the absolute injunction on the ground that this course would prevent the defendants from using their own improvements, which were combined with those of the plaintiffs, the patent having some six months to run. "Howe's patent," says the learned judge, "will expire on the 10th of September next. It may or may not be extended. It is stated that the defendant has an establishment in which he is making these machines. If all the rights of Howe can be protected, and indemnity can be secured to him without stopping this manufacture between the present time and the 10th of September. I think the court ought to give him and the manufacturers of the Sloat machine, the benefit of the contingency, that at that time they may be allowed to go on without a permission from Howe, if his patent should not be extended." Howe v. Morton [Case No. 6,769]. That case was stronger for the plaintiffs than this in some respects. The defendants were manufacturers of the machine; the patent had a little longer time to run; and the contingency of a renewal was not very improbable. Here the patent can not be extended further without a special act of congress. A similar decision was made by Mr. Justice Grier in Parker v. Sears [Id. 10,748].

No doubt there might be circumstances in the conduct of an infringer which would induce the court to interfere at the very latest period to stop a fraudulent, or even willful, use of a patent right. I find no such cir-

cumstance here. The defendants bought their machines of the person of whom they had been accustomed to buy them. It does not appear whether they were aware that the patent had been extended, and that the patentee denied the right of Goddard to continue to make and sell the improvement under the original agreement. In the absence of express notice I ought not to look upon their conduct as either fraudulent or willful. Without going the length of some English cases and saying that the defendant must be sued very promptly if a special injunction is to be asked for, I still must think there is much good sense in the general doctrine that one who is known to the patentee to be using his improvement in apparent good faith, is entitled to definite and early information of the patentee's construction of his own rights and of his intention to enforce them. The absence of such authentic notice is one circumstance to be considered by the court.

Upon the whole, I must refuse this motion on the authority and the reasoning of Howe v. Morton [supra].

[For other cases involving this patent, see note to Parkhurst v. Kinsman, Case No. 10,-757.]