## Brown *v.* Deere, Mansur & Co.

*(Circuit Court, E. D. Missouri.* February 5, 1881.)

1. INFRINGEMENT—SUSPENSION OF INTERLOCUTORY DECREE—POWER OF
COURT.

 The suspension of an interlocutory decree, perpetually enjoining
the infringement of a patent, until an accounting can be had and a
decree entered from which an appeal can be taken, rests in the dis-
cretion of the court which granted the decree.

2. SAME—SAME—SAME.

 In the exercise of such discretion the court should look carefully to
all the facts and circumstances involved, regarding the difference be-
tween royalties, licenses, and patent monopolies.

3. MOTION OVERRULED.

 Motion to suspend the interlocutory decree for a perpetual injunc-
tion overruled under the circumstances of this case.—[ED.

*George Harding* and *John R. Bennett,* for plaintiff.
*West & Bond* and *S. S. Boyd,* for defendants.

TREAT, D. J. On the hearing of this cause upon the mer-
its, it was decided that the plaintiff's patent was valid, and
that the defendants had infringed the same.* A motion for
rehearing is now presented substantially on the ground that the
defendants have discovered since said hearing proofs of prior
use and anticipations of plaintiff's patent, invalidating the
same. The motion looks to setting aside the decree and per-
mitting an amended answer to be filed, in which the newly-dis-
covered matter may be interposed. To that motion there are
valid objections: *First.* Under the rules governing such cases,
the time within which such defences can be presented is pre-
scribed by law. No adequate excuse is given for the non-pres-
entation of the alleged defences within the prescribed time.
*Second.* So far as the motion and accompanying affidavits
disclose, there is no adequate reason, even if the supposed
new matter had been presented in time for changing the
decree.

 The parties in this case had been at issue for about two
years, and, after mutual indulgence as to the date of hearing,

*See *supra,* 484.

the cause was finally presented to the court upon the evidence submitted, with elaborate arguments by respective counsel. Ample opportunity had been given to the parties and counsel, and, now that a decree has been ordered, if the case is to be opened, new pleadings introduced, with the necessary delay as to the taking of evidence thereunder, the probability is that the patent will, in the meantime, have expired. The patent in question has only one year to run, which, if wasted in litigation, leaves the patentee no direct benefit from its existence, but remits him only to profits, damages, etc., recoverable from the infringers.

This court has already passed upon the main issues as made by the pleadings and evidence, and there is no sufficient ground for the motion to rehear or open the case in order to let in new pleadings, etc. The motion for rehearing is overruled.

There is another motion calling for grave consideration, viz., to suspend the injunction ordered after a full hearing, so that the defendants may not have their business destroyed pending the account with a view to a final decree, from which decree they intend an appeal with a *supersedeas*. They now offer to give a bond in any sum the court may name if a suspension of the injunction order is granted until the case has ripened into a final decree from which an appeal can be had.

The grounds of the motion are substantially that, before the hearing and decree of the court, defendants had entered into a large number of contracts to furnish their corn-planters to agriculturists in several states, and that there is not adequate time for them to reconstruct their machines so as to avoid the infringement as found without disappointing their customers, and fastening upon themselves large damages for non-fulfilment of their many contracts.

The first inquiry relates to the power of the court to grant the motion. It must be remembered that, after a full hearing on the merits, it has been decided that defendants are infringers, and all that remains for a final decree is the ascertainment of the sum of money to which defendants shall re-

spond. Pending proceedings for the ascertainment of that sum, it is asked that the injunction be suspended so that the defendants may continue to infringe, upon giving bond to answer in damages, etc., if it be finally determined on appeal that they are liable.

The underlying thought has often occurred to this court with respect to both equity and admiralty cases; and it has sought in vain to rescue litigants from the obvious mischief to ensue if its decisions should be finally reversed. Still, the United States supreme court has held, and still holds, that no case can pass under its supervision until final judgment, which final judgment, in equity or admiralty, is not when the main question as to liability is determined, but when the case is finally closed, including damages, etc., whereby the measure of liability is also ascertained. The grounds of these decisions are familiar and of great force. Cases should not go to that tribunal in a fragmentary way; that is, it should not be required to pass upon the interlocutory decrees or judgments of the lower courts, and then have subsequently to adjudicate in the same cases supplementary questions.

Such being the rule as to appeals, what remedy has a defendant intermediate the interlocutory and final decree? He may be positive in his conclusions that the court below has committed a grave error which the appellate tribunal will correct, yet great or irreparable damage will ensue if in the intermediate time the judgment of the court is not stayed—not intermediate the final decree and the decision of the supreme court against which a *supersedeas* can be had, but intermediate the interlocutory and final decree of the lower court.

On the other hand it is urged, as in this case, that a court of competent jurisdiction having decided that an infringement exists, it should not tolerate the continuance of such an infringement to the destruction, it may be, of plaintiff's rights, because the defendant, perchance, may, at a proper time, take an appeal. It is to be presumed that each court has full confidence in its own judgment, yet is solicitous for a full review, and will give the amplest opportunities

therefor. But there is an intermediate stage of the litigation to be considered.

If the trial court has, on mature consideration, given its judgment, shall it forego it because at some indefinite time thereafter an appeal may be taken? Suppose it suspends its judgment and no appeal is taken, who shall remedy the mischief thus produced? The plaintiff ought not to be left unprotected in whose favor a decision has been had, and on the other hand the defendant ought not to be deprived of his right to an appeal. The law clearly provides for all cases except that under consideration, viz., the intermediate stage between the decree for a perpetual injunction and the accounting necessary for a final decree, from which alone an appeal can be had.

The attention of the court is called to the following cases, in some of which strong *dicta* are given, and in others positive decisions made: *Barnard* v. *Gibson*, 7 How. 658; *Dorsey Harvester Co.* v. *Marsh*, 6 Fisher, 401; *Bliss* v. *City of Brooklyn*, 4 Fisher, 597; *Morris* v. *Lowell Manuf'g Co.* 3 Fisher, 51; *Sanders* v. *Logan*, 2 Fisher, 170; *Kirby, etc.*, v. *White*, 1 FED. REP. 604; *Potter* v. *Mack*, 3 Fisher, 386; *Whitney* v. *Mowry*, 3 Fisher, 175.

These are noted among the many cases cited, because they sufficiently establish the rule by which the lower court should be governed, and, so far as seen, no well-considered case is in conflict therewith. The distinction between the doctrines governing a motion for preliminary injunction and the suspension of an interlocutory decree for a perpetual injunction, after full hearing on the merits, must be carefully observed. The force of these authorities is, as right reason exacts, that each court should, according to the facts presented, decide whether, in justice to the parties, the interlocutory decree should be suspended until the final determination of the suit, or take immediate effect. If such be the true rule, what is the rightful application in this case? This suit has been pending for two years or more, each party confident that the decision would be in his favor. In the meantime each has proceeded accordingly. The plaintiff had not for many years

pushed his invention or put its products on the market. Occasionally, and to a limited extent, he had manufactured and sold his rotary seed droppers, but relied mostly on his oscillatory machine. In the meantime the defendants and those with whom they are associated had put upon the market their machines and built up a large trade. It is unnecessary now to discuss the relative merits of the respective machines.

One fact, however, has not escaped the attention of the court, viz.: that the plaintiff seemingly attached very little value to his patent until the defendants and their associates introduced and popularized plaintiff's patent. Still the plaintiff's rights exist and must be protected. The defendants knew the pendency of this suit, and that it was ripe for hearing; that it could be set down for hearing at the instance of either party before the defendants made any of the contracts named in either affidavit. They are vendors of the infringing machines, and pending this suit, and while it was ready for final hearing, they entered into contracts to furnish the same, the non-fulfilment of which will subject them to serious damage. Does that fact present any just ground for permitting them to continue their infringement? Were not those contracts in their own writing? The plaintiff submits affidavits to the effect that he is prepared to supply the trade to some, if not to the full, extent of the demand. This is not a case where the patentee relies upon the sale of licenses or a royalty, but where he maintains his monopoly both as manufacturer and vendor. The patent has about a year to run. All that he can derive therefrom must come to him through his monopoly within that time. Hence the importance to him of having the interlocutory decree take immediate effect. Some courts in special cases seem to place stress on the fact that the life of a patent is about to expire, when asked to suspend the operation of an interlocutory decree; their judgments, it is to be supposed, resting upon the thought that the injury to the plaintiff must be slight, for which full compensation can be given, while on the other hand the defendant may be largely damaged if he is not permitted to

continue his infringement for the brief interval prior to the termination of the patent. Can such considerations affect questions of right? Will a court permit a wrong to continue because the continuance of the wrong, if not stopped, will soon come to an end? The fact that a plaintiff's monopoly is about to expire makes it the more important that he should enjoy it unmolested during its brief continuance.

There are some aspects of this case which incline the court, if it could be done within legal rules, to grant the motion made by the defendants; but having determined on full hearing what are the respective rights of the parties, it discovers nothing in the affidavits to justify any suspension of the injunction ordered. An additional suggestion should be made. If the defendants give bonds and pursue their infringements pending the account to be taken before the master, when will that accounting be closed, so that a final decree can be entered? As the decree now stands, with a perpetual injunction, the account relates to prior damages, etc. What shall be done with respect to the continually-recurring damages, if the injunction is suspended? If the master's report as to the past, dating from the interlocutory decree, what decree shall be finally entered as to damages accruing subsequently thereto? Where is a final decree to be entered, so that an appeal can be had, and what shall that decree include? Must there be a new accounting ordered as to the continuing infringement? This court must make a final decree at some time, and if it permits the infringement to continue on bond given, when will it finally dispose of the case? So long as, under its permission, the infringement continues, constantly-recurring damages are suffered to accumulate.

These suggestions are made to indicate the legal and practical difficulties involved in the question, and to show that under the rule heretofore stated the court should look carefully to all the facts and circumstances involved, before granting a motion to suspend its interlocutory decree regarding the difference between royalties, licenses, and patent monopolies.

The views of this court with respect to preliminary injunc-

tions have been repeatedly announced, and in one case as to an interlocutory decree. In the latter case the thought was that after an interlocutory decree as to a product the infringer should not be permitted to put on the market an inferior product to the detriment of the plaintiff, whereby not only a competition should occur in the market, but the inferior product disparage the true product. That case can have no adequate reference to this; for it may be that the defendants' machines are, as to practical utility, superior to those manufactured by the plaintiff, still the patentee is entitled to what the law grants, and if any difficulties occur, as suggested, they are to be corrected by legislation, and not by judicial decision.

The decision of the court, therefore, is that the motion for rehearing is overruled, and the motion to suspend the interlocutory decree for a perpetual injunction is also overruled.