## CONSOLIDATED ROLLER-MILL Co. *v.* COOMBS.

*(Circuit Court, E. D. Michigan.   July 22, 1889.)*

PATENTS FOR INVENTIONS—INJUNCTION—SUSPENSION OF WRIT.
  After an adjudication upon the merits in a patent case, an injunction will not be suspended unless public interests are involved, or the issuing of the writ will involve the stoppage of a manufactory in the operation of which a large number of persons are interested. Hence, where the defendant used but one machine, and the evidence tended to show that the patented device might be taken out of such machine without great expense or long continued stoppage, it was held that the injunction ought not to be stayed.

*(Syllabus by the Court.)*

In Equity.   On motion to stay injunction.

Plaintiff obtained against the defendant the usual decree in patent cases for an injunction against further infringement, and a reference to a master to compute damages.   Defendant moved to stay the issuing of the injunction upon the ground that plaintiff was not a manufacturer, but derived its profits from selling or licensing its machine, and that the damages to defendant by stopping his mill would be out of all proportion to the amount of plaintiff's license, or to any damages that would be occasioned to it by defendant's continued use of machines.

*R. Mason*, for plaintiff.

*Parkinson & Parkinson*, for the motion.

BROWN, J.   We are asked by this motion to determine whether after an adjudication adverse to the defendant upon the merits of a patent case we ought to stay the issue of an injunction until final decree.   So far as preliminary injunctions are concerned, it is entirely well settled that while the patent may be adjudged valid and the defendant an infringer the award of an injunction is purely a matter of discretion, and courts are constantly in the habit of withholding it upon such terms, as to the giving of a bond and the like, as may seem just and equitable, having regard to the comparative injury that will result to the parties by granting or withholding it. *Parker* v. *Sears*, 1 Fish. Pat. Cas. 94; *Howe* v. *Morton*, Id. 586; *Morris* v. *Manufacturing Co.*, 3 Fish. Pat. Cas. 67; *Tracy*

v. *Torrey*, 2 Blatchf. 275; *Potter* v. *Whitney*, 1 Low. 87; *Hoe* v. *Advertiser Corp.*, 14 Fed. Rep. 914; *Forbush* v. *Bradford*, 1 Fish. Pat. Cas. 317.

. After an adjudication upon the merits, the case becomes somewhat complicated by the provisions of the constitution and statutes which secure to the inventor "the exclusive right to his discovery." If this right be "exclusive," it is difficult to see how the court can limit or impair it by requiring the patentee to accept anything less than the complete monopoly which the law awards him. While he may not be a manufacturer himself, and may derive his sole profit from licensing others to use his device, still such licenses are entirely voluntary upon his part, are completely within his own control, and the courts have, strictly speaking, no power to demand of him that he shall license the defendant to use his machine, as they are enabled to do indirectly by refusing an injunction upon requiring a bond to pay the amount of the license or such damages as he may have suffered by defendant's use of his machines. If this, then, were a final decree, we should have no hesitation in denying this motion to stay the injunction, unless immediate notice were given of an appeal, when the provisions of the ninety-third rule would attach, and the staying of an injunction would become a matter of discretion, to be determined by the facts of each particular case.

It has undoubtedly been the practice in a few of the circuits to stay an injunction in certain cases where an appeal is contemplated, and defendant would be irreparably injured; and where public interests are involved, and the people are likely to be injured by denying them the use of plaintiff's machine, there can be no question as to the propriety of such action. *Bliss* v. *City of Brooklyn*, 4 Fish. Pat. Cas. 597; *McElroy* v. *Kansas City*, 21 Fed. Rep. 257; *Ballard* v. *City of Pittsburgh*, 12 Fed. Rep. 783.

A reference to some of the leading cases will show under what circumstances it has been the practice of the courts in these circuits to suspend an injunction after an adjudication upon the merits. In *Barnard* v. *Gibson*, 7 How. 650, the supreme court indicated that the injunction ought to be suspended where defendant had invested many thousand dollars in machinery which, by such a procedure, became useless, and their right to run the machines would expire in the course of a few months. The court remarked that unless the defendants were in doubtful circumstances, and could not give bond to respond in damages, should the right of the plaintiff be finally established, they supposed the injunction would be suspended. In *Sanders* v. *Logan*, 2 Fish. Pat Cas. 167, Mr. Justice GRIER held that neither an injunction nor an accounting were necessary or proper, because the only injury to the plaintiff's rights consisted not in using his invention, but in failure to pay the price of the license. The learned judge uses strong language in this connection, and the opinion undoubtedly lends considerable support to the defendant's position in this case. In *Rake Co.* v. *Marsh*, 6 Fish. Pat. Cas. 387, Judge McKENNAN, of the third circuit, withheld an injunction upon filing a bond, upon the ground that the plaintiff, not being a manufacturer, would be adequately protected by the payment of a just compensation for the use of his invention; and the defendants had an exten-

sive establishment, and a large capital invested in it for the manufacture of machines, and seemed to have conducted their business under the impression that it was no invasion of the rights of others. "A sudden stoppage of it would be disastrous to them, and would not benefit the plaintiff." In its facts the case is readily distinguishable from the one under consideration. In the same circuit, in *McCrary* v. *Canal Co.*, 5 Fed. Rep. 367, an injunction was denied without discussion, upon the ground that much greater injury to the respondent than benefit to the complainant would result from it. We think these three cases may be regarded as establishing a rule in the third circuit somewhat at variance with those existing in most of the others. In *Hoe* v. *Knap*, 27 Fed. Rep. 204, Judge BLODGETT denied an injunction, after entering an interlocutory decree, upon the ground that the owner of the patent had not, after a reasonable time, put it into use, holding as matter of law that a patentee is bound either to use the patent himself, or allow others to use it on reasonable or equitable terms. I find myself unable to concur in this view. A man has a right to deal as he chooses with his own. I know of no reason why a patentee is bound to make use of his own inventions, or to license others to use them, any more than the owner of a manufacturing establishment is bound to run it for the benefit of his neighbors or employes. As observed in the earlier portion of this opinion, the question of licensing another to use an invention is one which the patentee alone has the right to answer; and courts cannot lawfully compel him to make use of his invention, or to permit others to use it against his will.

We will now proceed to examine the authorities in the other circuits. In *Howe* v. *Newton*, 2 Fish. Pat. Cas. 531, Judge LOWELL, of the first circuit, held that the fact that plaintiff granted licenses, and that defendant was not a maker and vendor, but only a user, was, independently of the fact that the maker had not been sued, a circumstance to be taken into account; "but it has not been considered sufficient reason in this circuit to refuse the writ, excepting in combination with other circumstances, either of doubt as to title, or of hardship in the operation of the injunction." The defendant was restrained from using one boot-tree. It is but just to say that it appeared that no special damage would result to defendant by enjoining the machine. The case is not unlike the one under consideration. In *Potter* v. *Mack*, 3 Fish. Pat. Cas. 428, Mr. Justice SWAYNE observed that when a patentee obtains a decree settling the right to an injunction, the practice in all the circuits, as he had understood, was to make the injunction a part of the decree. "That is the right of the party unquestionably, unless there be shown some special grounds of peculiar hardship to the defendant. * * * There may be circumstances which would render that action proper, but I should not be willing to establish such a rule as general." "Again, too, as within my own knowledge, the practice in all the other courts is adverse from that now sought to be established, and I should be reluctant to strike out a new course." The court found no special hardship in the case, and ordered an injunction. See, also, *Whitney* v. *Mowry*, Id. 175.

In *Chemical Works* v. *Hecker*, 11 O. G. 330, Judge NIXON, of New Jersey, refused to assent to the proposition that it had become the established practice in his circuit to stay injunctions until the coming in of the master's report.

"No special practice," says he, "has ever prevailed in this circuit; although sporadic instances may be found where the court has very properly listened to and heeded such applications. On the other hand, the ordinary practice is for an injunction, as a matter of course, to follow a decree in favor of the complainant on the merits, unless the defendant is able to show the court such facts and circumstances existing in the case as make it manifest that the equities between the parties demand the withholding of the injunction until after an accounting has been had."

In *Brown* v. *Deere*, 6 Fed. Rep. 487, the question has been discussed at length by Judge TREAT, and the motion to suspend the injunction was overruled, although, before the hearing, defendants had entered into a large number of contracts to furnish their machines to agriculturalists in several states, and there was no adequate time for them to reconstruct them so as to avoid the infringement without disappointing their customers, and fastening large damages upon themselves for non-fulfillment of their contracts. The opinion is a very valuable and instructive one, and the question appears to have been fully considered by the court. In *Munson* v. *Mayor, etc.*, 19 Fed. Rep. 313, Judge WHEELER held, on a motion to suspend an injunction during the pendency of an appeal from a final decree, that it should not be suspended unless some extraordinary cause were shown to exist outside the rights of the parties established by the decree. The defendant in this case was the city of New York, and the patented device was a register to preserve for safety and convenience of reference paid bonds and coupons. The learned judge held that the interests of the public were not such as required protection by staying the injunction.

There is no case in the supreme court which throws much light upon this question, although in *Birdsell* v. *Shaliol*, 112 U. S. 485, 5 Sup. Ct. Rep. 244, it is held that an infringer does not, by paying damages for making and using a machine in infringement of a patent, acquire any right himself to the future use of the machine. "On the contrary," says the court, "he may, in addition to the payment of damages for past infringement, be restrained by injunction from further use, and, when the whole machine is an infringement of the patent, be ordered to deliver it up to be destroyed." In *Penn* v. *Bibby*, L. R. 3 Eq. 308, the vice-chancellor observed:

"The patent is a continuing patent, and I do not see why the article should not be followed in every man's hand until the infringement is got rid of. So long as the article is used, there is continuing damage." "As to the royalties, I cannot compel the plaintiff to accept the same royalty from these defendants as he received from others. I cannot, in the decree, do less than give the plaintiff his full right, and I cannot bargain for him what he may choose, or may not choose to do."

The circumstances relied upon in this case in support of the motion are: That the plaintiff is not a manufacturer of these machines itself,

but derives its sole profit from licensing others to use them. That the defendant is not a manufacturer, but uses one of these machines in a series of roller-mills; and that the issuing of this injunction would involve the stoppage of the entire series, and a large expense to him in purchasing a new mill, or in so reconstructing this one as to avoid the use of plaintiff's invention. The counter-affidavits, however, satisfy me that his estimate of damages is greatly exaggerated, and that the change could be made with but little expense or inconvenience, and without stopping his establishment. It is incredible that an accident, which is liable to occur at any time, should involve the disastrous consequences set forth in the defendant's affidavits. We are willing, however, that he should have 20 days to make the necessary changes. At the expiration of this time, the usual injunction will issue, to stand until the final decree, after which, if an appeal be taken, the propriety of continuing the injunction under the ninety-third rule will be considered by the court. We do not wish to be understood as denying the power of the court to stay an injunction, even after final decree, and, if this writ involved the stoppage of a manufactory, in the operation of which a large number of people were interested, the question might be determined by different considerations. The motion is denied.