### ELECTRIC SMELTING & ALUMINUM CO. v. CARBORUNDUM CO.

(Circuit Court, W. D. Pennsylvania. November 24, 1900.)

No. 10.

1. PATENTS (§ 317*)—SUM FOR INFRINGEMENT—INJUNCTION.

In a suit for infringement of a patent, although infringement is found and an accounting ordered, the court has power to refuse an injunction if the facts are such that it would be inequitable to grant it.

[Ed. Note.—For other cases, see Patents, Cent. Dig. §§ 559–565; Dec. Dig. § 317.*]

2. PATENTS (§ 317*)—SUIT FOR INFRINGEMENT—INJUNCTION—DISCRETION OF COURT.

Defendants were the sole manufacturers of carborundum, having built up an extensive business, and having a large and expensive plant with machinery built for that special work. Their product was also protected by a patent, but in its manufacture they used a process of smelting by electric current which was held to infringe complainant's patent, and without the use of such process their plant could not be operated. Their use of it was entered into in good faith, and without knowledge that it was an infringement. Held that, while complainant was entitled to a decree for an injunction and an accounting, inasmuch as it was not in competition with defendant as a manufacturer and could be fully compen-

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

sated in damages. the injunction would be withheld on the giving of a bond by defendant to secure the payment of such profits and damages as complainant might recover.

[Ed. Note.—For other cases, see Patents, Cent. Dig. §§ 559-565; Dec. Dig. § 317.*

Grounds for denial of preliminary injunctions in patent infringement suits, see note to Johnson v. Foos Mfg. Co., 72 C. C. A. 123.]

In Equity. Suit by the Electric Smelting & Aluminum Company against the Carborundum Company. On settlement of decree for complainant.

C. M. Vorce, for complainant.
Thomas W. Bakewell and George H. Christy, for defendant.

BUFFINGTON, District (now Circuit) Judge. In this case the Circuit Court of Appeals, reversing the lower court, held the respondent infringed claims 1, 2, and 4 of the process patent of Cowles, No. 319,795, but had not infringed either claim 1 or 2 of the apparatus patent in suit. 102 Fed. 618, 42 C. C. A. 537. That court further said:

"The decree of the Circuit Court is reversed, with directions to enter a decree for the complainant in accordance with this opinion, but without costs heretofore incurred to either party."

It is now moved to enter a decree, and varying forms of proper decrees have been submitted by counsel. Apart from the instructions of the court above as to decreeing the validity of the patent in question, the infringement of its recited claims and the disposition of the costs, I am of opinion that the duty of passing on and determining the form of the decree in other respects is one which the higher court impliedly relegated to this court. So regarding it, I now proceed to its settlement.

[1] Ordinarily such decree is for an accounting, and an injunction follows as matter of course, unless there are cogent reasons for departing from such course. That an injunction may be refused, even when there is a decree for an accounting, and the patent is still in life, the adjudicated cases in this circuit settle. In entering a final decree in Rumford v. Hecker, Fed. Cas. No. 12,134, 2 Ban. & A. 386, where an injunction was ordered, Judge Nixon stated the general rule thus:

"Courts have the power to withhold it (the injunction), and usually will do so, in those cases where by granting the injunction, there seems to be more danger of producing an irreparable injury to the defendant, than of preventing it on the part of the complainant."

On final hearing in Dorsey v. Marsh, Fed. Cas. No. 4,014, 6 Fish. 387, it was held that, while complainant was entitled to a decree, it should be so framed as not to subject the respondent to any avoidable loss. In that case, to which reference is made hereafter, an injunction was refused, conditioned if security was entered. Other cases in this circuit showing the exercise of this power, under the

peculiar facts of each case, are Sanders v. Logan, Fed. Cas. No. 12,295, 2 Fish. Pat. Cas. 167 (Mr. Justice Greir) ; McCrary v. Pennsylvania Canal Co. (C. C.) 5 Fed. 367; Ballard v. City of Pittsburgh (C. C.) 12 Fed. 783. "We think these cases," says Mr. Justice Brown, then District Judge, in Consolidated Roller Mill Co. v. Coombs (C. C.) 39 Fed. 805, "may be regarded as establishing a rule in the Third circuit somewhat at variance with those existing in most of the others." The power of withholding an injunction in a proper case being assured, we next inquire whether the facts of this case justify its present exercise.

[2] After very thoughtful consideration and with a due regard, as I view it, to the rights of all parties, I have reached the conclusion that while a decree should be entered for an accounting and an injunction, the latter should be a conditional one. The facts of this case are exceptional and are therefore a law unto themselves. The respondent has a large plant built and adapted for the manufacture of carborundum. The machinery and apparatus were likewise built for that special work. It is respondent's sole business, and in that article and its various applications they have built up a large trade and extensive use. In building up its business and in constructing its plant they have expended between $400,000 and $500,000. They are the sole makers of carborundum, the complainant never having embarked in that business. Carborundum has come into extensive use as an abrasive in different industries—many of the large railroad systems, the two large air-brake companies, and is almost exclusively used in the granite polishing of this country and Scotland. It is manufactured under a patent of the United States which will not expire for some 10 years. In that patent, record page 765, the respondent's assignor was granted a claim for "the within described product being silicide of carbon, SiC," which is the chemical name of carborundum. In smelting silica and carbon to produce carborundum the respondent, by the decision of the court, have used a smelting process invented by Cowles and infringed the recited claims of his patent. The case therefore presents the exceptional condition that the respondent can only run its plant to make carborundum by using the Cowles process, and Cowles cannot, so long as the carborundum patent stands as an exclusive grant, which is its present position, smelt silica and carbon to produce carborundum. The result, therefore, of a stoppage of these works is the sudden cutting off of the supply of carborundum to many industries. This result, while important in itself, is not, however, the impelling one with us. It is its effect on the two parties to this litigation. An injunction would bring no gain to the complainant, would not transfer to it the benefit of the business now built up in carborundum, would not relieve it from competition, for, as we have seen, it is not engaged in its manufacture. On the other hand, such injunction would disintegrate and destroy an existing business, built up at the cost of time and large expenditure, would render idle and practically valueless a large plant of specialized machinery and equipment and throw out of employment a hundred and fifty men for whom there is no other carborundum works in which to

seek employment.   Moreover, it is alleged, and we are convinced such is the case, that the stoppage of these works by injunction means financial ruin to the respondent company.   Indeed, if the course now urged by the complainant be adopted, it would seem not alone that no benefit would be conferred on it, but that the source from which alone it could expect to recover its decree in accounting would be swept away.   The reasons adduced for the exercise of this strong arm of the court's power are stated in the complainant's brief as follows:

"It is also asserted that an injunction will not benefit the complainant, but this is pure assumption.   In point of fact an injunction is of great value and indeed of supreme importance to the complainant.   Business reasons forbid the spreading upon record all the facts which make an injunction of prime importance to the complainant; some of them were disclosed in the oral argument, but many other weighty reasons exist which could be stated if circumstances permitted."

The reasons advanced at the argument were that respondent's refusal to come under license encouraged others to contest the Cowles patent and made licensees unwilling to pay royalties.   Whatever may have been the effect of the respondent's contesting of this patent heretofore, I fail to see how the issue of a conditional instead of an unconditional injunction in this case could now affect other users of the process.   The patent has been sustained, and its validity and the fact of its infringement are now being decreed by this court.   The special form of relief applicable to the facts of this particular case cannot affect the relations of other alleged infringers or licensees. Moreover, the fact that there are other licensees under this patent would seem to minimize the difficulty that often arises in these cases, viz., where the patentee has retained the entire monopoly of his patent.   Then, too, regard is to be had in this case to the fact that the respondents, while they have been decreed infringers, do not stand before this court in the light of wanton, reckless ones.   They had a patent for a new article of manufacture, the art of commercial electric smelting was comparatively new.   It was an intricate one, and its subtleties were such as to render possible wide divergencies of view, as to its precise limits and methods, while this litigation was in progress.   In the meanwhile the respondent has manufactured its patented article, has secured its use in many arts and industries, and has built up a large trade.   In so doing it has entered a field no one else was occupying.   It is not therefore the case of a willful and deliberate entry by an infringer into competition with an established business and introducing competition against a patentee entitled to a monopoly in such business field, but it is the use in good faith of the Cowles process in a branch of industry which the patentee was not then and has not since occupied.   By the decision of the court it now transpires that such use was unlawful.   In such case if full compensation and reparation can be afforded the patentee by a money equivalent, why should it not be done instead of resorting to the grave alternative of closing the plant by injunction with all its needlessly ruinous results?   If the question of which were the wiser course were new, I would incline to the former as better for both complainant and respondent.   But the question, as I view it, is not new.

Changing the names and business of the parties I find an insistent precedent in the strikingly similar case of Dorsey v. Marsh, supra, decided by Judge McKennan than whom few men were the equal in a wise and just disposition of questions of discretion. I follow his language in disposing of this motion:

> "The complainant is entitled to a decree; but it ought to be so framed as not to subject the defendant to any avoidable loss or injury. The complainant is not a manufacturer of carborundum, so far as appears, and will be adequately protected by the payment of a just compensation for the use of the Cowles invention. The defendants have an extensive establishment, and a large capital in it for the manufacture of carborundum, and seem to have conducted their business under the impression that it was no invasion of the rights of others. A sudden stoppage of it would be disastrous to them, and would not benefit the complainant.
>
> "A decree will therefore be entered for an injunction and an accounting; but no injunction will issue until the further order of this court if the defendant, within ——— days from the date of this decree, file a bond in such sum and amount as this court may approve, to secure to the complainant the profits and damages which it may ultimately be decreed to pay."