## LANDIS TOOL CO. et al. v. INGLE.

(Circuit Court of Appeals, Third Circuit. January 31, 1923.)

No. 2876.

1. **Patents ⊝324(6)—Defeated claimant of title cannot thereafter raise issue of validity.**

Where defendants, in a suit for infringement of a patent, with ample time to choose the ground, deliberately defended on the ground that they were the owners of the patent in question, and sought to enjoin infringement by complainant, they cannot, after decree in their favor on that issue was reversed on appeal, raise for the first time the issue of the invalidity of the patent.

2. **Patents ⊝301(6)—Facts held to show temporary injunction caused injury to infringer without benefit to patentee.**

Where the assignee of the patent was not manufacturing machines under the patent, and the infringer had a large number of machines under course of construction, which embodied the patented invention, and which would be worthless, except as scrap, if they could not be completed and sold, a temporary injunction against future infringement would result in great damage to the defendant, without corresponding benefit to the owner of the patent, who in fact would be benefited by the completion and sale of the machines, the profits from which he would be entitled to receive on the accounting.

3. **Patents ⊝306—In exceptional circumstances, injunction can be stayed until final decree.**

In exceptional circumstances, a temporary injunction against the infringement of a patent can be stayed until the entry of the final decree, if that can be done to the advantage of both parties, on condition that the defendant give bond to secure any judgment which may be rendered against him for infringement committed while the injunction was stayed.

Appeal from the District Court of the United States for the Middle District of Pennsylvania; Charles B. Witmer, Judge.

Suit by Arthur H. Ingle against the Landis Tool Company and another for infringement of patent. Decree for complainant (277 Fed. 247), and defendants appeal. Modified on condition.

E. W. Bradford, of Washington, D. C. (William A. Redding, of New York City, of counsel), for appellants.

Clyde L. Rogers, of Boston, Mass. (Charles H. Howson, of Philadelphia, Pa., of counsel), for appellee.

Before BUFFINGTON, WOOLLEY, and DAVIS, Circuit Judges.

WOOLLEY, Circuit Judge. This case in different aspects has been before this court several times. It was brought in the District Court by Arthur H. Ingle, as assignee of the Carey patent, No. 1,244,449, for boring machines, charging the Landis Tool Company and the Gurney Electric Elevator Company with infringement of all its claims. The defendants in their answer did not deny the validity of the patent; indeed, they admitted its validity in a counterclaim in which the Landis Tool Company asserted ownership of the patent, charged the complainant with infringement, asked for an injunction restraining the complainant from infringing, and prayed that

⊝For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

the complainant be decreed to assign the patent to it. Here was a true issue of title, the only issue raised and tried, and on that issue the Landis Tool Company had a decree dismissing the bill and ordering the complainant to execute an assignment of the patent to it. 262 Fed. 150. On appeal this decree was reversed. 272 Fed. 464. After the mandate had gone down, the District Court entered an interlocutory decree in which it held the patent valid, adjudged Ingle the owner, found the claims infringed by the defendants, directed an accounting and issued a perpetual injunction restraining the defendants from the further construction, use or sale of the improvements covered by the patent claims. 277 Fed. 247. This is the decree now here on appeal.

[1] Between the filing of the opinion of this court indicating a reversal of the first decree of the District Court and the entry of the second or interlocutory decree, the defendants, by a series of applications in both the District Court and this court, endeavored to procure an opening of the case and obtain a rehearing on an amended answer questioning for the first time the validity of the patent. In none of these moves have they prevailed because this court was, and still is, of opinion that the Landis Tool Company, not through mistake but deliberately and with obvious purpose, chose to stand on its claim of title. It did not attack the validity of the patent for, claiming the patent as its own and making a countercharge of infringement, it wanted its validity sustained. This is evidenced by its prayers for injunctive relief against the complainant and for assignment of the patent. Having gone to trial on an issue of its own selection, obtained a decree in its favor in the District Court and defended that decree on appeal, it cannot now, after reversal, open the case which has been finally closed, plead a new defense clearly available at the beginning—and for several years after—and try the case again. New Equity Rules, rule 30 (201 Fed. v, 118 C. C. A. v).

Therefore we affirm the decree of the District Court—with a possible modification of one part.

[2] It appears that at the time of the entry of the interlocutory decree directing an accounting and awarding a perpetual injunction against the defendants they had a large amount of money invested in boring machines constructed mainly under other patents but containing nevertheless the invention of the patent in suit. These machines were, and are, in various stages of completion. Their "construction, use or sale" is now enjoined, and, in consequence, they stand idle in the plant of the defendants awaiting the outcome of this appeal. As our decision is adverse to the defendants, what is the practical situation if the injunction of the interlocutory decree should remain in force? Obviously the defendants will not be allowed to finish, use or sell any of the machines. Except for their scrap value, they will lose all the money they have invested in them. How will this benefit the complainant? He, in turn, will lose any profits and gains which otherwise would come to him from their infringing use or sale and he will not have sustained very material damage if they are scrapped instead of used or sold. Not overlooking the complainant's

rights in the monopoly which the law has given him, it should be observed that he is not manufacturing under this patent nor, so far as we have been informed, has he any licenses outstanding. In other words, he is not a competitor of the defendants, nor are the defendants competitors of his, in the manufacture of boring machines. Therefore it would seem that enforcement of the injunction would cause much greater injury to the defendants than benefit to the complainant. Winchester Repeating Arms Co. v. Olmstead, 203 Fed. 493, 494, 121 C. C. A. 615; Consolidated Roller-Mill Co. v. Coombs (C. C.) 39 Fed. 803; Rousso v. Barber (C. C. A.) 276 Fed. 552. Indeed, as we view the matter, the immediate enforcement of the injunction would not confer any benefit upon the complainant but would in fact work an injury to him as well as to the defendants.

In this situation the question has occurred to us whether in the interest of all parties we should direct that the writ of perpetual injunction be stayed until final decree. Such procedure is not novel in this circuit. It is invoked, however, only in exceptional cases, such as justify a course quite out of the ordinary. Of such cases a striking illustration is Electric Smelting & Aluminum Co. v. Carborundum Co. (C. C.) 189 Fed. 711, where one party held a product patent and the other a process patent and where the patented product could only be made by the patented process and the process was mainly valuable in making the product. In that case—the suit being by the owner of the process patent against the owner of the product patent—infringement was found and the decree was for an injunction and an accounting but the injunction was suspended until the further order of the court upon the filing of a bond by the defendant infringer to secure to the complainant the profits and damages which it might ultimately be decreed to pay. The authorities, however, are not in harmony on this procedure. Those sustaining it as well as those opposing it may be found cited and discussed in Electric Smelting & Aluminum Co. v. Carborundum Co. (D. C.) 189 Fed. 710; Consolidated Roller-Mill Co. v. Coombs (C. C.) 39 Fed. 803; Ballard v. Pittsburgh (C. C.) 12 Fed. 783; McCrary v. Pennsylvania Canal Co. (C. C.) 5 Fed. 367; Brown v. Deere-Mansur & Co. (C. C.) 6 Fed. 487; Dorsey Harvester Revolving Rake Co. v. Marsh, 6 Fish. Pat. Cas. 387, Fed. Cas. No. 4,014. The only intimation by the Supreme Court that we can find is in Barnard v. Gibson, 7 How. 650, 12 L. Ed. 857. This inclines to the practice.

[3] Clearly we think this is a case for the application of this procedure. Should the injunction remain in force the defendants, who though infringers were not wanton infringers, will sustain a substantial loss, indeed, an irreparable loss; yet if the injunction be suspended it is a loss that can be avoided and without injury to the complainant. Therefore in the exercise of our discretion, Rumford Chemical Works v. Hecker, Fed. Cas. No. 12,134; Consolidated Roller-Mill Co. v. Coombs (C. C.) 39 Fed. 803, and with careful regard to the comparative injuries that will result to the parties by presently enforcing or suspending the injunction, we shall do this: Unless within fifty days after the filing of this opinion the parties, or any of them, shall

interpose objection and persuade us to the contrary, we shall affirm the decree of the District Court in all particulars except that of the injunction and, in respect thereto, we shall direct the District Court to reform its decree, suspend the injunction, pending the accounting, to a definite day to be determined by it with leave to extend the same, and stay the writ of perpetual injunction until final decree, conditioned, however, upon the filing of a bond by the defendants, at such time as the District Court shall name and in such amount and with such security as it shall approve, to protect the complainant against infringements other than those here involved and secure to the complainant the profits and gains which shall have accrued to the defendants and damages which shall have been sustained by the complainant by reason of infringements when completed by sale, according as the same may ultimately be decreed to be paid; further providing that the defendants may, without risk of punitive damages, complete all machines, begun and not finished, which embody the invention of the patent and sell the same, together with completed machines embodying the invention, and make report thereof from time to time as the court shall determine; without limitation, however, upon any of the rights of the complainant to make, use or sell the invention of his patent, to grant licenses thereunder, or to sell the patent and assign the same, subject however to the terms of the decree.

In the event of the failure of the defendants to give bond conditioned for suspending the injunction as aforementioned, the perpetual injunction now ordered shall stand and the decree of the District Court shall be in all respects affirmed.