## BALLARD and others *v.* CITY OF PITTSBURGH.

*(Circuit Court, W. D. Pennsylvania.* July 7, 1882.)

1. PATENTS FOR INVENTIONS—ABANDONMENT OF INVENTION.

Where an application for a patent was made and refused, and not till five years thereafter was an amendment of his application filed and an effort to obtain its allowance renewed, the delay is sufficient to raise the inference of an abandonment; but if this inaction is explicable consistently with legal requirement it will not operate to the prejudice of the rights of the inventor.

2. SAME—WEDGE-SHAPED BLOCKS FOR PAVEMENT.

The laying down of a pavement in the defendant's streets, with wedge-shaped transverse channels, made of wedge-shaped blocks, described in patent No. 94,062, and according to the method described in patent No. 94,063, is an infringement of the patent owned by complainants, assignees of the inventor.

3. SAME—INJUNCTION WITHHELD.

Where the interference with the use of wooden pavements constructed in a city, in infringement of complainants' rights, would only operate injuriously on the public, without benefiting complainants, an injunction will not be granted.

In Equity.

*C. C. Cole* and *Chas. F. Blake,* for complainants.

*Nelson Cross* and *George Shiras, Jr.,* for respondent.

McKENNAN, C. J. The bill in this case is founded upon three patents, all of which are alleged to have been infringed by the respondent: (1) Letters patent to Turner Cowing, assignor to Tallmadge E. Brown, No. 101,590, dated April 5, 1870, for "improvement in wood pavement." (2) Letters patent to William W. Ballard and Buren B. Waddell, (who assigned his right to Ballard,) No. 94,062, dated August 24, 1869, for "improved wood pavement." (3) Letters patent to the same persons last named, (Waddell having assigned his interest in the invention to Ballard,) No. 94,063, dated August 24, 1869, for "improved mode of cutting blocks for wood pavement." The first two patents are, then, for wooden pavement as a structure, and the last for the method of preparing blocks to be used in such structure.

The cardinal feature of the pavement described and claimed in the first patent consists in wooden blocks, with inclined sides, so laid on their larger ends as to form wedge-shaped crevices or grooves for the reception of concrete or other suitable filling. Although this patent is dated April 5, 1870, the original application for it was made November 13, 1865, and it is therefore prior to all other patents, to which my attention has been called, for the form of wood pavement described in it. Whatever mutations this application may have undergone after it was filed in the patent-office, the wedge-shaped crevices, and the necessarily sloping sides of the blocks, were a distinguishing feature of it, and I think, therefore, the patent finally granted was properly engrafted upon it as its parent stock.

It is urged, however, that Cowing's application was abandoned, and that his patent cannot relate back to the date of the filing of the application. On the twenty-seventh day of December, 1865, a patent was refused him, and the case remained in this condition until May 5, 1869, when an amendment of his application was filed, and the effort to obtain its allowance renewed. This interval of inaction is certainly sufficient to justify an inference of abandonment, because of the apparent default of the applicant in the prosecution of his application with due diligence, as the law requires. But, as has been repeatedly held, if this inaction is explicable consistently with this legal requirement, it will not operate to the prejudice of his right as a meritorious inventor. It *was* thus explained by the proofs laid before the commissioner of patents, in which it appeared that the applicant had been "generally incapacitated for business by mental disorder." Thereupon the case was reconsidered, by the commis-

sioner,—himself one of the most eminent patent lawyers of his time, —and the patent granted, as I think, rightfully.

During this interval, however, to-wit, on the thirty-first of March, 1868, letters patent No. 76,227 were granted to Miller & Mason for an improved wood pavement. These patentees disclaimed the "invention of the wedge-shaped blocks," but claimed as their invention a combination consisting of wedge-shaped blocks, when so laid as to break joints with those of the opposite rows, concrete filling, and a continuous wood foundation. But the wedge-shape channels between the rows of blocks, caused by the use of blocks with inclining sides, was the invention of Cowing, whose application for a patent was then pending in the patent-office. The pendency and allowance of this application subordinated Miller & Mason's patent to Cowing's, and precluded the use by them of the wedge-shaped channel in their combination without his consent. This was the state of the art when the two remaining patents set up in the bill were applied for and granted. The first of these, No. 94,063, is for a method of cutting blocks for wooden pavement so as to form by two cuts, or one cut and one splitting, two finished blocks, with the top and bottom level, or in parallel planes, and the sides bevelled, one side being inclined with the fiber, and without waste of material. The other, No. 94,062, is for the blocks produced by this method, as an article of manufacture, and also for a wooden pavement constructed with them.

It is very earnestly urged that this method of producing fabrics of wood is not novel, and that it is indicated in the patent of Miller & Mason. I do not propose to follow this discussion in detail. It is sufficient for me to say that the proofs fail to show that a block of wood adapted to pavement construction, or any analogous fabric, suggestive of such use, with the top and bottom in parallel planes, and the sides bevelled, one side being inclined with the fiber, had been made, or that two such blocks could be formed out of a piece of timber of suitable dimensions by two cuts, or one cut and one splitting, without waste of material, before the date of the patents in question. Nor does the patent of Miller & Mason even indefinitely describe the Ballard block, or indicate any method of making it. All that is said is that the blocks are to be bevelled on both sides from top to bottom, and "to be cut from plank, and are of the usual size, having the fiber *vertical*," or that they "can be cut with less waste of material by cutting them from timber, and splitting the timber blocks with the

proper bevel." But this does not describe a wedge-shaped block having the grain running *parallel* to one and *oblique* to the other of its bevelled sides, nor how two of such blocks may be produced at the same operation without waste of material by two cuts of a saw.

All of these three patents the respondent is shown to have infringed, in causing to be laid upon two of its streets, viz., Lincoln and Fifth avenues, wooden pavements with wedge-shaped, transverse channels made of wedge-shaped blocks, described in patent No. 94,062, and according to the method described in patent No. 94,063. In describing the mode in which the blocks used in these pavements were made, Mr. Diester, in his deposition, sufficiently identifies them with the patented block and process, but the exhibits produced by him are demonstrative.

I am, therefore, of opinion (1) that the patent of Turner Cowing, assignor to Brown, is valid, and covers the use of the wedge-shaped channel or crevice, therein described, in wooden-pavement construction; (2) that the patents to Ballard and Waddell, Nos. 94,062 and 94,063, are also valid, and that they secure to said patentees the exclusive right to make and use, in wooden pavements, the blocks therein described; (3) that the wedge-shaped channel is embodied in the pavements aforesaid, constructed for the city of Pittsburgh, and that wedge-shaped blocks, formed and made substantially as described and directed in Nos. 94,062–63, were used in the construction of said pavements; (4) that there ought to be a decree for the complainants.

Inasmuch as any interference with the use of the wooden pavements constructed in the city of Pittsburgh, in infringement of the complainant's rights, would only operate injuriously upon the public, without benefiting the complainants, an injunction will not be granted. But there must be a reference to a master to ascertain profits and damages, and a decree will accordingly be entered.