## KANE *v.* HUGGINS CRACKER & CANDY CO. *et al.*

*(Circuit Court, W. D. Missouri, W. D.* December 11, 1890.)

1. PATENTS FOR INVENTIONS—INFRINGEMENT—INJUNCTION.
   Injunction to restrain infringement of a patent will not be granted against a corporation which has disposed of the business in which the patented device was used before the bill was filed, and has not since used it.

2. SAME.
   Nor will injunction be granted against the president of such corporation, who has been retained as an employe by the purchaser of the business of the corporation.

3. SAME—TEMPORARY INJUNCTION.
   In the absence of a prior adjudication of the validity of a patent and of proof of general acquiescence therein, the court will not grant an injunction *pendente lite* on a bill to restrain infringement, where the proof leaves it uncertain as to the patentability of the patented article, and where it appears that respondents have large and valuable property, and are perfectly solvent, and the measure of complainant's damages in case his patent is finally established can be easily ascertained.

*Banning, Banning & Payson* and *Huston & Parrish*, for complainant.
*Goudy, Green & Goudy, Offield, Towle & Linthicum,* and *Warner, Dean & Hagerman,* for defendants.

PHILIPS, J. This is an application for injunction for the infringement of letters patent granted one George D. Moffat of Chicago, Ill., assignor of Thomas Kane, letters No. 356,394, dated January 18, 1887, entitled "Candy, and process of manufacturing the same." The Huggins Cracker & Candy Company is a corporation of the state of Missouri, at Kansas City, Louis Huggins is a citizen of the state of Missouri, residing in this district, and the American Biscuit & Manufacturing Company is a corporation of the state of Illinois, at the city of Chicago. Where the patent is clear on its face, and its validity is not assailed *aliunde,* injunction is not only an appropriate, but may be termed the natural, remedy for an infringement. Injunction is, however, an extraordinary remedy, and the discretion of the chancellor obtains in granting the writ in patent cases, as in other applications for injunction in equity. No further discussion of the merits of the patent in question will be indulged than is deemed necessary to warrant the conclusion reached on this application for a temporary writ.

As to the Huggins Cracker & Candy Company the writ is refused, for the reason that I am satisfied, on the showing now made, that some three months prior to the filing of the bill herein this company sold and conveyed its stock, material, and plant to the American Biscuit & Manufacturing Company, since which time it has not employed the patented device in question. As the office of the writ is to restrain an existing

user, it will not be granted after the use has ceased. *Brammer* v. *Jones*, 3 Fish. Pat. Cas. 340. It is true the bill avers that this transfer was and is simulated; that the Huggins Cracker & Candy Company but entered into what is commonly known as a "trust," retaining its corporate autonomy, still pursuing its customary business, with corporate responsibility, looking only to the success of the "combine" for its profits, and being subject to such compact. It is also true that some evidence of the continued business, *eo nomine*, by the Huggins Cracker & Candy Company is presented by the use of the letter-heads of the company in certain correspondence of Louis Huggins, its former president. But the counter-affidavits so clearly show an absolute sale and transfer and the retirement from such business by the corporation, as such, that it would be unreasonable to hold that the complainant had made out a prevailing *prima facie* case sufficient to warrant a restraining order against the corporation.

As to the respondent Louis Huggins, the facts disclosed are that he was the president of the Huggins Cracker & Candy Company, and, when the sale and transfer were made to the American Biscuit & Manufacturing Company, he was retained by the latter company merely in charge of the concern in Kansas City. At the time of filing the bill herein, he was only the employe of the American Biscuit & Manufacturing Company. Whatever he did in the matter of the imputed use of the patented device was for and on behalf of the latter corporation. In such case the injunction, if granted, should go against the corporation, and not the servant; for if the corporation be enjoined, the servant's occupation is gone.

The more important question is as to the right of an injunction *pendente lite* against the American Biscuit & Manufacturing Company. The record proofs and the evidence *aliunde* leave it uncertain as to whether or not Moffat was the first discoverer of the alleged patented device. A patent was granted on the 23d day of December, 1884, No. 309,720, to William P. and James W. Kirchoff, for an improved process of, and apparatus for, the manufacture of candy. There was no contention at the hearing that this Kirchoff process is not substantially identical with the process claimed by the Moffat patent, and the proofs confirm this. It is true there was an interference contest had before the patent-office, at the instance of the complainant, prior to the grant of the Moffat patent, and that the Kirchoffs withdrew from the contention in favor of Moffat, and authorized the issue of the patent to him. But the fact remains that, while Moffat asserts that he was the discoverer of the claimed process and resultant product anterior to the Kirchoffs, and had so publicly proclaimed his discovery, and that the Kirchoffs simply took advantage of his pecuniary inability to prosecute his invention to patent, and availed themselves of the fact to intercept his application by filing an earlier *caveat*, yet the Kirchoffs make affidavit that they conceived the invention in November, 1875, and made an apparatus to carry out the process as early as May, 1882, and practically and publicly used the same in 1882, while Moffat claims to have made his discovery in October, 1881, and put it to prac-

tical use in October, 1882. It also appears from the papers in the case that the complainant, Kane, paid the Kirchoffs $6,500 for their patent, about the time of their consent, filed in the patent-office, that the patent might issue to Moffat. It may be true, as asserted by complainant, that this $6,500 was paid by him solely by way of compromise, as the shortest road to peace, and the determination of a contest which could only postpone the realization of his expectations under a claim justly entitled to be protected by a patent. But as the matter stands, without more, there is grave misgiving as to the *bona fides* of this transaction. Again, if, as a matter of fact, Moffat made his discovery, as now claimed by him, a serious question arises, whether or not he has not slept upon his conception so long before applying for a patent as to warrant the presumption of a dedication to the public use. If the Kirchoffs in taking out their patent omitted to make claim of other devices of combination apparent on the face of their patent, which, as now claimed, were essential to its practical use and effect, the law presumes as to them that it was a dedication to the public use of the omitted matter, and they could make no subsequent claim thereto, until they had, with all due diligence, surrendered their patent for reissue, and made proof that the omission arose wholly from inadvertence, accident, or mistake. *Miller* v. *Brass Co.*, 104 U. S. 350. What is not claimed becomes public property. *Mahn* v. *Harwood*, 112 U. S. 354, 5 Sup. Ct. Rep. 174.

If, as a matter of fact, Moffat, living in the same town with the Kirchoffs, knew, as he seems to have known, of the grant to them, and stood by for two years without contest, now claims that the Kirchoffs appropriated his property in invention, is he in any better condition that would have been the Kirchoffs in laying claim to the omitted subjects? And will the law allow him, after such lapse of time, to obtain patent for the device known to him, and publicly put in use by the Kirchoffs and himself? 16 U. S. St. p. 201, § 24. Again, is not the Moffat patent invalid as to the third claim upon which relief in part is sought by this bill? His application was filed in 1886, and the patent was first issued in January, 1887. The third claim as laid by him was: "A new product, the herein described candy, composed of glucose and grape sugar, having, as distinctive characteristics, whiteness, clearness, hardness, and a resistance to atmospheric moisture." After he filed his application, and a month after the grant, the complainant, Kane, as assignee, tendered a surrender, and applied for a reissue, in which the specification was changed in lines 19 and 20, page 2, by striking out the words "grape sugar," and substituting therefor the words "cane sugar," and the reissued patent ran accordingly. There is such a radical difference between grape sugar, as thus employed, and cane sugar, as to make the change not only important, but an enlargement of the scope and effect of the original patent. The bill itself recites, respecting these amendments, "that such letters patent, being found to be inoperative or invalid by reason of an improper and defective specification, * * * was afterwards surrendered, and duly canceled by the commissioner." There was no affidavit made by Moffat, the inventor, that the omission

in the specification was through inadvertence, accident, or mistake, and nothing to this effect appears, Without such showing, the commissioner was not authorized to make the reissue. *Miller* v. *Brass Co. supra; Moffit* v. *Rogers*, 106 U. S. 423, 1 Sup. Ct. Rep. 70. The reissue could not enlarge the claim of the original patent. Its office is solely to perfect the description attempted in the original, or to narrow and circumscribe the grant. *Dunbar* v. *White*, 15 Fed. Rep. 747; *Nye* v. *Allen*, 15 Fed. Rep. 114; *Giant Powder Co.* v. *California, etc., Co.*, 6 Sawy. 508, 4 Fed. Rep. 720; *Knight* v. *Railroad Co.*, 3 Fish. Pat. Cas. 1.

The other two claims of the patent are as follows:

"*First.* The improved method of manufacturing candy, consisting in cooking a compound of cane sugar and glucose in *vacuo* until it acquires a consistency appropriate for the production of the candy demanded. *Second.* The improved method of manufacturing candy, consisting in cooking cane sugar and glucose in *vacuo* until it arrives at a hard crack or stick-candy consistency."

The commissioner of the patent-office had first rejected the application of Moffat for want of novelty, on account of prior grants to the Kirchoffs and to one Chase, which the commissioner said "fully met the invention." There were at that time three other prior patents touching this matter which do not appear to have been brought to the attention of the officer who had this question under consideration. One was a patent to Gossling in 1864, one to Nossian in 1874, and one to Gieseke and Hamlin in 1882. If the Chase patent influenced the action of the department in the rejection of the Moffat application, the other above-named patents ought to have presented quite insuperable obstacles. These prior patents clearly show that at the time of granting the Moffat patent there was nothing novel in the process of cooking a compound of glucose and cane sugar in water, nor was there any novelty in employing a vacuum pan for this cooking instead of the old fashioned open oven. Notwithstanding the claim of Moffat in his specifications to the contrary, the Nossian specification distinctly presented the vacuum pan or condenser for his process, and the boiling to a degree of heat approximating that of Moffat's. The specification recites:

"By my apparatus and process I am enabled to evaporate and reduce to syrup of proper consistency much more rapidly than has heretofore been done in open pans, without any possible danger of scorching or burning the same, and can manufacture all varieties of rock candy thereby at a much less cost than has been possible by the old method of manufacture, and produce it in large quantities, perfectly clear and colorless."

Nor was his invention and process limited to the manufacture of rock candy, as is mainfested by the further statement in his specification, for he says:

"My invention is designed particularly for the manufacture of rock candy, in which case the syrup, after reaching the proper consistency, is run into the ordinary moulds, provided with strings, as usual, to facilitate crystallization. But it is evident to those skilled in the art of making candy that my invention may be employed with equal advantage for the manufacture of other varieties of candy."

The first of his claims was:

"The process herein described of reducing syrup to proper consistency for the manufacture of candy by evaporating the same at a temperature of 80° Reaumur in a vacuum, as and for the purpose described."

Moffat's especial claim is:

"To produce candy, more especially stick candy, of a quality superior to that resulting from the ordinary process as regards its clearness or brilliancy, its strength, and its resistance to atmospheric influences, and at the same time to lessen the cost of manufacture."

He further claims that hitherto in the manufacture of candy it had been customary to boil the cane sugar either alone or with a per cent. of glucose not exceeding 25 per cent., in open kettles or pans, and he had discovered that by the addition of a larger percentage of glucose he was enabled to produce the candy claimed by making use of a vacuum pan. The substance of these identical claims was embraced within the specifications of the preceding patents either taken separately or together.

The question of difficulty in my mind, as at present advised, is whether or not the Moffat patent does not simply take old and known appliances or apparatus, and, by combining well-known substances in an equivalent form, produce results or a product which require merely mechanical skill, vigilance, and care, without calling into requisition inventive genius. The stick candy produced by him is by boiling a compound of cane sugar and glucose syrup in *vacuo* to a certain consistency so as to avoid coloration and brittleness with liability to atmospheric influences on the one hand, and, reaching crystallization on the other. As in the processes of one or more of the patents above named, the characteristic is the evaporation of the syrups and in *vacuo* to such an extent that the stick candy will be produced. This is, it seems to me, after you have the compound boiled together and in the vacuum pan, substantially nothing more than carrying on the boiling process to a given point of evaporation, so as to pass the degree of brittleness and darker coloration, and yet not go so far as to reach crystallization. Does this require inventive genius, or merely mechanical skill, vigilance, and care, any more than that which a competent cook would exercise in boiling an egg or making angel food? As is said in *Smith* v. *Nichols*, 21 Wall. 112:

"A mere carrying forward of an original conception patented,—a new and more extended application of it,—involving change only in form, proportions, or degree; the substitution of equivalents, doing the same thing as did the original invention, by substantially the same means, with better effects,—is not such an invention as will sustain a patent. It is the invention of what is new, and not the arrival at comparative superiority or greater excellence in that which was already known, which the law protects as exclusive property, and which it secures by patent."

This rule of distinction was applied to the instance of a textile fabric possessing a certain substantial construction and essential properties long known and in use, and the patent was declared void when all that distinguished the new fabric was a higher finish, greater beauty of surface,

greater tightness of weaving, due to the observation or skill of the workman and of the perfection of the machinery employed. If the result attained is brought about simply by mechanical skill or knowledge that belongs to that department of labor rather than the result of mind or genius of invention, it does not entitle the party to a patent. *Tatham* v. *Le Roy*, 2 Blatchf. 474. Combined results are not necessarily a novel result, nor are they an old result obtained in a new and improved manner. Simply bringing old devices into juxtaposition, and there allowing each to work out its own effect, without the production of something novel, is no invention. *Hailes* v. *Van Wormer*, 20 Wall. 353. This principle is aptly stated by Judge THAYER in *Brinkerhoff* v. *Aloe*, 37 Fed. Rep. 92:

"Where several old elements are so combined as to produce a better instrument than was formerly in use, but each of the old elements does only what it formerly did in the instrument from which it was borrowed, and in the old way, the combination is not a patentable one."

The application of these rules to the facts of this case, without further argument and demonstration, which may be expected on the final hearing, leaves my mind in such a state of uncertainty respecting the patentability of the complainant's device as to compel me to refuse the temporary injunction, in the absence of any prior adjudication determining the validity of the patent, and in the absence of satisfactory proof of general acquiescence. *Fraim* v. *Iron Co.*, 27 Fed. Rep. 457; *Dickerson* v. *Machine Co.*, 35 Fed. Rep. 143; *Booth* v. *Garelley*, 1 Blatchf. 247. In addition to all of which the proofs show clearly that the respondents are possessed of large and valuable property and are perfectly solvent. The complainant is not a manufacturer, but simply holds this patent for the sale of licenses. He has an established license fee, so that the measure of his damages if his patent be finally established is easily ascertained. In such case the court may well refuse the provisional writ. *Morris* v. *Manuf'g Co.*, 3 Fish. Pat. Cas. 67; *Machine Co.* v. *Hedden*, 29 Fed. Rep. 147; *Rude* v. *Westcott*, 130 U. S. 152, 9 Sup. Ct. Rep. 463; *Bell* v. *Stamping Co.*, 32 Fed. Rep. 549; *Smith* v. *Sands*, 24 Fed. Rep. 470; *Hoe* v. *Advertiser Corp.*, 14 Fed. Rep. 914.

The preliminary writ of injunction is refused.