## VAN RAALT et al. v. SCHNECK.

(Circuit Court, E. D. Wisconsin. January 27, 1908.)

1. TRADE-MARKS—INFRINGEMENT—INJUNCTION.

Complainants, packers of Holland herring in the Netherlands, arranged with S., a fish broker in Milwaukee, to handle such herring under the supervision of B. & Co., complainants' Western representatives. B. & Co. suggested that the herring sold by S. should be identified by a brand; the word "Globe" being selected for that purpose with complainants' consent. In 1903 S. sold the business to defendant, who continued to use the "Globe" brand until 1904, when complainants changed their brokers and consigned

their fish to K., when they discontinued the use of the "Globe" brand. Defendant, believing that the symbol belonged to him, registered it as a trade-mark in the Netherlands and applied for registration at Washington, when complainants filed an interference and were entitled to priority, but registration was denied because of prior registration by defendant, who thereupon disclaimed all title to the symbol and ceased to use it, also renouncing any claim under the Netherlands registration; nor was there any proof that defendant, after such disclaimer, ever sold any Holland herring under that name. *Held* insufficient to justify an injunction restraining defendant from infringing complainants' right to such symbol.

2. SAME—ACCOUNTING—EQUITY.

Where, in a suit to restrain infringement of a trade symbol, complainant was not entitled to an injunction, equity would not retain jurisdiction for a naked accounting of profits and damages; complainant's remedy at law being adequate and complete.

## In Equity.

This is a suit in equity for unfair competition in trade and the infringement of a trade symbol. The bill was filed in July, 1906. Prayer for injunction and accounting. The complainants are dealers in fish, who reside in the Netherlands, and are engaged in importing fish to America. It is alleged that, the complainants desiring to build up a trade in Milwaukee and vicinity in Holland herring, one of the members of the firm visited this country in 1900 and made arrangements with one Selle, a fish broker at Milwaukee, to handle the Holland herring packed by them. Boak & Co., of Chicago, also brokers, handled the output of the complainants in Chicago, and had also a supervision over the Milwaukee trade. The fish were sold outright by the complainants, but under a trade arrangement Selle was obliged to account to Boak & Co. for a share of the profits of the business. Boak & Co., as the immediate representatives of the complainants, suggested to Selle that he ought to have a particular brand under which he might work up a trade, and proposed that he adopt a symbol that Boak & Co. prepared, and which was called the "Globe" brand. No fish had theretofore been sold by the complainants under this symbol. By mutual agreement between Boak & Co. and Selle, this brand was adopted to be used in the Milwaukee business, and complainants assented to the arrangement. In 1902 Selle sold an interest in his brokerage business to the defendant, who afterwards continued, to use the Globe brand and built up a considerable business in Milwaukee and vicinity. In 1903 Selle sold out his interest in the firm to the defendant, who continued the business and the use of the Globe brand until 1904, when the complainants changed their brokers and consigned their fish to one Kuehn, another Milwaukee broker. Selle testified that he supposed in good faith that the Globe brand belonged to him, and so informed the defendant, who supposed, as he avers, that this symbol passed to him with other assets of the business.

When the complainants began shipping their fish to Kuehn, they discontinued the use of the Globe brand, and thereafter the Holland herring of the complainants were sold under an "O. K." brand which belonged to Kuehn. Defendant during a visit abroad met the complainants, and was assured by them that he was the only party in the West who received shipments of Holland herring under the Globe brand. In the letters to Selle and to defendant, frequent reference is made to the Globe brand as "your Globe." Under the supposition that the symbol belonged to him, defendant applied for and secured registration of the same as a trade-mark in the Netherlands, and then applied for the registration of such trade-mark at Washington. When the attention of complainants was drawn to the fact of registration, they made application to the Patent Office at Washington in their own behalf to register this symbol as a trade-mark. Thereupon an interference was declared in the Patent Office. Proofs were taken, and complainants were held entitled to priority; but no registration could be given to them under the rules because of the prior registration by the defendant. As soon as the decision in the interference proceeding was announced, in April, 1905, defendant disclaimed

all title to the symbol, and ceased to use the same, and never has used it since that time. He also, at the request of complainants, signed a paper renouncing any claim under the Netherland registration and authorizing the cancellation of the same.

After this disclaimer and abandonment, some 15 months elapsed before this bill was filed, during which time there was no actual or threatened invasion by the defendant; nor is it contended that up to the present time there has been any infringement or threat of infringement. The only proof of any infringement is that the defendant, when a witness in the interference proceedings, admitted that between August, 1904, and April, 1905, he sold a small amount of Norwegian herring and some other fish under this brand. No Holland herring were so sold. There is no proof that complainants dealt in Milwaukee or vicinity in any other variety of fish except Holland herring.

Victor M. Harding, for complainants.
Mark A. Kline, for defendant.

QUARLES, District Judge (after stating the facts as above). The record in this case is crude and unsatisfactory, resulting largely from the fact that the defendant was not able to employ an attorney and has undertaken to manage his own case. The result was what might have been expected when one party is represented by shrewd counsel and the other side is without professional guidance or protection. The efforts of defendant to cross-examine were thwarted by technical objections, while the rules of evidence were not scrupulously observed in shaping up the complainants' proofs. No evidence was offered before the master by the defense. Subsequent to the closing of proofs a stipulation was entered into admitting in evidence all the proofs taken in the interference proceeding.

This case is sui generis. It is not the ordinary case where a trader has, by the use of a uniform brand or symbol, built up a large demand for his product, whose character and genuineness are attested by his trade emblem. On the other hand, this symbol was specially adopted and prepared for use by Mr. Selle in the Milwaukee territory. It was designed by Boak & Co., the representatives of complainants, after Selle had agreed to handle complainants' product in Milwaukee. It was then sent on to Selle for his approval, and afterwards transmitted to the complainants, who prepared the brands and sent them on to Selle. The two brands intended for the Milwaukee market were called the "Globe" and the "Banner," and the Globe were to be used on the superior quality of goods. It appears to have been the policy of the complainants to give any broker handling their goods one or two brands under which he was expected to build up a trade. Thus it appears that complainants were using some 12 to 15 other brands in various territories of the United States. The same quality of fish was shipped under various brands. For instance, the "Flag" brand and the "Globe" brand were used indiscriminately. Therefore whatever of value the symbol acquired in the Milwaukee market was directly attributable to the efforts of Selle and the defendant in advertising and selling complainants' product.

Another distinguishing feature in the case is that the defendant is not charged with imitating or simulating a well-known trade-name for the purpose of pirating an established business. The use of the

Globe brand by the defendant was entirely regular and proper up to 1904, when the complainants transferred their business to another broker in Milwaukee. The only infringement alleged consists in selling a small quantity of Norwegian herring, and some other kinds of fish under this symbol between August, 1904, and April, 1905, while the question to the title to the trade-name was pending in the Patent Office. The defendant contested the interference case because he claims that he supposed in good faith that he was entitled to the symbol. In my opinion this is not a case calling for injunctive relief. The peculiar facts disclosed by the evidence may well have induced the belief in the mind of the defendant, who was ignorant of the law, that the symbol specially designed for his territory and exclusively used by him and his predecessor was an appurtenance of the business.

The disclaimer by the defendant in April, 1905, upon the adverse decision of the Patent Office, appears to have been made in the utmost good faith. This was evidenced by his willingness to release all claim to the foreign registration. It appears that he signed such a release submitted to him by complainants' attorney. Furthermore, he ceased absolutely to use the symbol for about 15 months before the bill was filed. Over $2\frac{1}{2}$ years have now elapsed since the decision of the Patent Office, and there has been no actual or threatened invasion of complainants' rights. Under such circumstances, it is difficult to see why complainants have not had everything that an injunction could confer. Kane v. Huggins (C. C.) 44 Fed. 287; Brammer v. Jones, 3 Fisher, Pat. Cas. 340, Fed. Cas. No. 1,806; Brennan v. Emery-Bird-Thayer Dry Goods Co. (C. C.) 99 Fed. 971. In Clark Thread Co. v. Clark Co., 55 N. J. Eq. 658, 37 Atl. 599, the court say:

"The principle upon which the injunction goes is that the defendant was a wrongdoer when the bill was filed, and, having been a wrongdoer once, he may be so again," etc.

It is strenuously urged in argument that, although denying the injunction, equity would retain jurisdiction for the purpose of an accounting. But this contention has been set at rest by the Supreme Court in Root v. Railway Co., 105 U. S. 189, 26 L. Ed. 975, where the court say:

"Our conclusion is that a bill in equity for a naked accounting of profits and damages against an infringer of a patent cannot be sustained," etc.

If complainants have suffered damage by act of defendant, there is a complete and adequate remedy at law. It is unnecessary to discuss the numerous authorities cited by complainants' counsel. We have carefully examined them all, and find peculiar circumstances which differentiate them from the case at bar.

It is doubtful whether the proof shows any substantial loss or damage resulting from alleged infringement which would warrant an accounting. It appears that complainants' herring have been sold since August, 1904, in Milwaukee by Kuehn under the "O. K." brand, and that their business has been constantly increasing; but I am inclined to rest the case on the proposition that the proofs do not warrant equitable interference by means of injunction.

For these reasons, the bill will be dismissed, without prejudice to the right of complainants to institute a suit at law for damages, if so advised.